THOMAS H. GALE

v.

PHILIP KNOPF et al.

193   245
194   ¹552

*Opinion filed December 18, 1901.*

1. SCHOOLS—*high school district may be organized from parts of two townships.* Section 42 of article 3 of the School law of 1889, (Laws of 1889, p. 277,) when construed in connection with sections 38, 40, 41 and 43, authorizes the organization of a township high school district composed of two or more adjoining townships or parts of townships.

2. SAME—*a board of education may be elected for a high school district formed from parts of townships.* If a township high school district is organized, under section 42 of article 3 of the School law of 1889, from two or more townships or parts thereof, a board of education may be elected for such high school district, with power to levy necessary taxes to build the school house and support the school.

APPEAL from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

This is an appeal from the circuit court of Cook county dismissing a bill brought by appellant primarily against Philip Knopf, one of the appellees, who was county clerk of Cook county, to restrain him from extending a tax purporting to have been levied by the board of education of a high school district comprising parts of Cicero and Proviso townships, in that county. Separate answers were filed by Knopf and the board of education. The cause was heard simply upon the bill and answers, without replications.

The bill was filed November 15, 1900, and is brought by appellant in his own behalf and on behalf of all the tax-payers of school district No. 1, township 39, range 13, and school district No. 8, township 39, range 12, and avers that appellant is the owner of real and personal property and a tax-payer in each of said districts; that the districts lie contiguous to each other; that the county clerk is about to extend a tax levy of $30,000 on all taxable property within said two districts for the year 1900,

by virtue of the levy for township high school purposes made by Burton, Griffin, Moore, Heald and Brown, who pretended to act as a board of education of a township high school for said two districts; that said board of education was not a legal one and had no power to make a tax levy; that there is no statute of Illinois authorizing a board of education for a township high school organized from parts of two townships, and that the levy and certificate thereof to the county clerk are illegal and void and constitute no authority for extending said tax; that such tax would be a cloud upon the title to real estate. The bill further avers that the petition for organizing the high school prayed for an election for the purpose of establishing "township high school districts," which vote or election could not lawfully be had, and that the notice of such election called for an election for the purpose of establishing a *high school district*, and not on the proposition of organizing a high school; that the agreement made by the respective boards of trustees of said townships did not provide for the operation of said school when established, nor the proportions in which the expenses of maintenance should be contributed by the respective townships. After naming the parties defendant and waiving answer under oath, the prayer is that the county clerk may be perpetually enjoined from extending the tax, or any part thereof, against the property in the school districts named.

To this bill the board of education answered, admitting that complainant is a tax-payer and owner of real and personal property as set forth in his bill, and that the county clerk is about to extend a tax levy of $30,000 on the taxable property in the school districts named in the bill, for township high school purposes for the year 1900, and to that end has certified the same to the county clerk; that said Burton, Moore, Griffin, Heald and Brown, at the time of making said levy, were the members of the board of education of a township high school theretofore

duly organized in pursuance to statutes, for the benefit of parts of two adjacent townships, namely, all of township 39, range 13, which lies within school district No. 1, and all of township 39, range 12, which lies within school district No. 8; that prior to April, 1899, a petition, signed by more than fifty legal voters residing in each of said parts of said townships, and addressed to the township treasurer of each of said townships, was presented to the said treasurers, in words and figures following:

"To the township treasurer of the township of Cicero, otherwise known as township 39, range 13, and to the township treasurer of Proviso, otherwise known as township 39, range 12, of Cook county, State of Illinois, and to whom it may concern:

"We, the undersigned voters living within the district described in the caption to this petition, hereby respectfully petition that an election be called for the purpose of establishing a joint township high school district under that provision of the law which says: 'In like manner the voters and trustees of two or more adjoining townships or parts of townships may co-operate in the establishment and maintenance of a high school,' etc. (Art. 3, sec. 42, of the School Law.) The territory to which it is proposed to form a joint township high school district is known as district No. 1, township 39, range 13, commonly known as Oak Park, and district No. 8, township 39, range 12, commonly known as River Forest."

That upon receipt of such petition the trustees of the two townships from which it was proposed to take territory for forming a district, made and entered into a written agreement, as follows:

"It is hereby agreed by the township school trustees of township 39-13 and 39-12 of the county of Cook and State of Illinois, that a proposition for or against the establishment of a township high school district, to be composed of school district No. 1 of the town of Cicero, township 39-13, and district No. 8, of the town of Pro-

viso, township 39-12, be submitted to the voters residing in the territory of such proposed high school district at the annual election for township school trustees on April 8, 1899. It is further agreed that due notice of such election for or against such high school district shall be posted according to law. And it is further agreed that if such proposition for the establishment of a high school district above described shall carry in the affirmative, that an election for the board of education for such high school district shall be called by the school trustees of said township on determination of such results."

That pursuant to such agreement an election was called by the trustees of each township for Saturday, April 8, 1899, being the time of the regular election of trustees, at which the voters of the two school districts proposed to be organized into a high school district were called upon to vote; that notices of such election were given according to law, and that an election was duly held and a large majority of the voters in each of said parts of townships voted in favor of establishing said township high school for the benefit of such territory; that after said election was had, each of the boards of trustees of the respective townships made and passed the following resolution:

"WHEREAS, heretofore, a petition of more than fifty legal voters of school district No. 1, in township 39, range 13, and more than fifty legal voters of school district No. 8, in township 39, range 12, both in Cook county, Illinois, was duly filed with the township treasurer of each of the aforesaid townships more than fifteen days preceding the regular election of trustees in each of said townships, asking each of said township treasurers to notify the voters that an election would be held at said regular election 'For' or 'Against' a township high school composed of the aforesaid school district; and whereas, an agreement in writing was duly made and signed by the board of trustees of the aforesaid townships prior to said regular election; and whereas, said election thereon was duly called and held at the regular election of trustees in said townships and for the parts of said townships composed of each of the aforesaid school dis-

tricts; and whereas, at said elections a majority of the voters in each of said districts or parts of said townships was in favor of establishing a township high school composed of said district No. 1, in township 39, range 13, and district No. 8, in township 39, range 12, both in Cook county, Illinois; now, therefore,

"*Be it resolved*, that school trustees of said township No. 39, range 13, and township No. 39, range 12, both in Cook county, Illinois, co-operate together for the purposes hereof; that a special election be and is hereby called to be held within said district No. 1, in township 39, range 13, and district No. 8, in township 39, range 12, Cook county, Illinois, comprising the parts of said townships so voting to establish a township high school, for the purpose of electing a township board of education consisting of five members; that said election shall be held at the regular polling places in said district No. 1, and at the school house at the corner of Ashland avenue and Lake street in said district No. 8, on Saturday, the 20th day of May, A. D. 1899; that the township treasurers of said townships are hereby directed to co-operate together in the giving of the notice of said election as required by law."

That pursuant to said resolution a special election was held on Saturday, the 20th day of May, 1899, which was within sixty days from the time of the election establishing the high school district, for the purpose of electing the township board of education of five members; that notice of such election was given for the same time and in the same manner as is provided for the election of township trustees; that at such election the defendants, Burton, Moore, Griffin, Heald and Brown, received all the votes cast and were declared duly elected as members of said board of education, and that they thereupon drew lots, at their first meeting, to determine the length of term of each; that within ten days after their election they met and organized by electing Burton president and Griffin secretary; that by the lots thus drawn Burton and Brown were to serve one year, Griffin and Heald two years and Moore three years; that on April 14, 1900, being the second Saturday in April, at the regular election called pursuant to law, Brown and Burton were elected as their own successors, and that within ten

days from such election the members of the board met
and organized by electing Burton president and Griffin
secretary, and that said board of education immediately
entered upon its duties and continued to perform them
to the time of bringing said bill.   The answer further
avers that in July, 1899, said board of education made
and certified a tax levy of $40,000, in the manner pre-
scribed by law, upon the taxable property within said
parts of townships, for high school purposes for the year
1899; that after making said levy said board ascertained
that only $30,000 was required for the said purpose, and
thereupon passed a resolution to reduce said tax levy to
$30,000; that the county clerk refused to comply with said
resolution, and thereupon one H. W. Austin, a tax-payer
in said school district No. 1, and George L. Thatcher, a
tax-payer in said school district No. 8, each brought his
suit in the circuit court of Cook county against the town
collectors and the said board of education, and that the
said circuit court enjoined the collection of the excess
of said tax over said $30,000 and adjudged that said tax
was valid as to said $30,000; that said complainants in
those suits, and the present complainant, and all other
tax-payers within said high school district, availed them-
selves of such injunction and paid the tax so reduced;
that the board of education having learned that some
*nisi prius* court had adjudged adversely to the organiza-
tion of a township high school from parts of two town-
ships, submitted to the State's attorney of Cook county
the proceedings upon which said township high school
was organized, and invited him to proceed by *quo warranto*
to test the validity of such organization, if he deemed it
invalid; that after investigation and consideration the
said State's attorney declined to authorize a proceeding
in *quo warranto*, for the reason that he deemed said or-
ganization valid; that thereupon said board of education
leased a high school building at Oak Park at the rental
of $5000 a year and contracted with thirteen teachers for

their services, purchased a large amount of supplies and furniture for said school and opened said school in September, 1900, with about three hundred and fifty pupils, and that since that time such school has been in successful operation; that the making of all said contracts was necessary for the proper conduct of said school; that the tax levied, of $30,000, has all been collected and partly expended; that said board for 1900 has certified a tax of $30,000, which was about to be extended by the county clerk, and which tax was necessary for said high school purposes; that said high school district comprises Oak Park and River Forest; that neither of said districts can alone maintain an adequate high school, and that the combination of the parts of the two said towns has produced an economical and satisfactory arrangement for educational facilities.

The appellee Knopf answered, admitting that he was about to extend the tax in question, and set up many of the facts alleged in the answer of the defendant's co-appellees, showing the regularity of the organization of the district and the bringing and the adjudication of the former suit, and the payment of the taxes under the former decree.

The errors assigned are, first, in dismissing the bill; second, in not granting the injunction as prayed.

JESSE A. BALDWIN, for appellant.

F. J. GRIFFIN, and NATHAN G. MOORE, for appellees Burton and others.

JULIUS A. JOHNSON, County Attorney, and FRANK L. SHEPARD, Assistant County Attorney, for appellee Knopf.

Mr. JUSTICE RICKS delivered the opinion of the court:

This case depends upon the conclusions to be reached on two propositions contended for by appellant: First, that there is no authority in law for the organization

of a high school district to be composed of parts of two school townships; second, that if such district could be legally organized, there is no authority in law for the election of a board of education for such school district. If either of the foregoing propositions is found for the appellant, then it is clear the cause must be reversed. On the other hand, if both are found for the appellees the judgment should be affirmed.

The appellees rest their defense on sections 38, 40, 41 and 42 of article 3 of the School law. (Hurd's Stat. 1899, pp. 1530, 1531.) So much of section 38 as is applicable is as follows: "Upon petition of not less than fifty voters of any *school township*, filed with the township treasurer at least fifteen days preceding the regular election of trustees, it shall be the duty of said treasurer to notify the voters of said township that an election 'for' or 'against' a township high school will be held at the said next regular election of trustees, by posting notices of such election in at least ten of the most public places throughout such township for at least ten days before the day of such regular election." Then follow the form of notice and a proviso not necessary to be quoted. So much of section 40 as is material is as follows: "If a majority of the votes at such election shall be found to be in favor of establishing a township high school, it shall be the duty of the trustees of the township to call a special election on any Saturday within sixty days from the time of the election establishing the township high school, for the purpose of electing a township board of education, to consist of five members, notice of which election shall be given for the same time and in the same manner as provided for in the election of township trustees. The members elected shall determine by lot, at their first meeting, the length of term each is to serve. Two of the members shall serve for one year each, two for two years, and one for three years from the second Saturday of April next preceding their election. * * * Within

ten days after their election, the members of the township board of education shall meet and organize by electing one of their number president, and by electing a secretary. It shall be the duty of the township board of education to establish at some central point most convenient to a majority of the pupils of the township, a high school for the education of the more advanced pupils."

"Sec. 41. For the purpose of building a school house, supporting the school and paying other necessary expenses, the township shall be regarded as a school district, and the township board of education shall have the power and discharge the duties of directors for such district in all respects.

"Sec. 42. In like manner the voters and trustees of two or more adjoining townships, or parts of townships, may co-operate in the establishment and maintenance of a high school, on such terms as they may, by written agreement made and signed by the board of trustees, enter into."

This last section is the only one in the act, except section 43, that in any manner refers to a high school in parts of townships. Section 43 is in relation to the discontinuance of high schools, and is, in part, as follows: "When any township, townships or parts of townships, shall have organized a high school and wish to discontinue the same, upon petition of not less than a majority of the legal voters of said township, townships or parts of townships, filed with the township treasurers of said townships, at least fifteen days preceding the regular election of trustees, it shall be the duty of said treasurers to notify the voters of the township, townships or parts of townships, that an election will be held on the day of said regular election of trustees for the purpose of voting 'for' or 'against' discontinuing the township high school," etc.

Whilst appellant admits that section 42, *supra*, seems to authorize the establishment and maintenance of a high

school by parts of two townships, he insists that that section neither authorizes nor contemplates the organization of a high school district. He says: "The law seems simply to provide for the 'co-operation' of two or more townships or parts of townships in the 'establishment and maintenance' of a high school upon the terms of a written agreement to be made and signed by the boards of trustees of the respective townships; that the co-operation intended is between said townships or parts of townships, as separate, independent entities, and there is no provision for merging them into a high school district;" and urges further, that the section, in speaking of the voters mentioned therein, means the voters of the entire township.

The question whether a high school district composed of parts of two towns is contemplated by this statute is an important element in the consideration of this case. We are obliged to take notice of the fact that any school organized under the laws of this State is to be established and conducted by taxation in some form. We are also obliged to note that, whatever form is adopted, the taxation must be uniform as to those affected by it. No plan or scheme is suggested by appellant by which taxes might be levied for the support of a high school without some territorial organization, and we can conceive of none under our system of taxation. The very logic of the situation seems to demand that a district for taxation and for high school purposes shall in some manner be created out of these proposed parts of townships. In arriving at the meaning of this statute we only follow the elementary principle when we look through the entire statute and all its provisions to find its true interpretation. When section 43 is examined it is difficult to come to any other conclusion than that the legislature had in mind a district with defined territory. In that section express mention is made three times, in the first part of it, to a high school involving at least parts of

townships, and the provision is, that when *the parts of townships* desire to discontinue the school, the majority of the legal voters of the *parts of townships* shall file a petition with the treasurers of the townships, and they shall give notice to the voters of the *parts of townships* of the time and place of the election in which they may vote for or against discontinuing the high school. If the voters of the *parts of townships* are not to vote, upon what theory can it be explained that the General Assembly, in framing this act, used such language as this each time parts of townships are mentioned? It is preceded by "township" and "townships." If, as contended by appellant, each of the entire townships, a part of which constituted the district or maintained the school, was to vote upon the question, there was no occasion for adding the requirement that the voters in the *parts of townships* should be notified and allowed to vote.

In the inception of this law the congressional or school township was taken as the unit, and such it has remained to the present time. Section 42, *supra*, was originally a proviso added to paragraph 163 of the School law of 1874. (2 Gross' Stat. p. 405.) As that proviso was originally passed, in the act of 1872, it only authorized single townships and two townships to establish high schools. By an amendment added in 1874 the power was further extended to parts of two townships, and what is now section 42 still remained as a proviso to the main section of the act authorizing the establishing of a high school in a single township. In 1889 a general revision and codification of the School law was had, and this proviso was enacted into a separate section of the statute as No. 42, *supra*. By the acts of 1872 and 1874 the trustees of schools were vested with the powers of school directors in relation to high schools. Being the trustees and having authority to regulate the division of their townships into districts, and also by these acts being vested with the powers of boards of directors, the language of section 42,

in the light of the then situation, was easily understood, and, we apprehend, if the trustees were still vested with the powers of boards of education or school directors to conduct these schools, and had formed a high school district out of parts of these two school townships and levied the tax in question, there would have been no controversy as to their authority.

Taking all the sections relative to the establishment of high schools into consideration, and further recalling that the trustees, as existing since 1889, are divested of all powers as boards of education or school directors, and taking into consideration the further fact that taxes shall only be imposed upon those who are to derive a benefit from them, we are forced to the conclusion that the organization of a school district for high school purposes was contemplated by this statute. Let us see for a moment what was done in that regard. The proposition was to take a school district in Proviso township and a school district in Cicero township and consolidate them, and make a high school district and establish and maintain a high school. To that end more than fifty voters in each of them petitioned each of the boards of trustees to organize a high school district comprising that territory. The trustees received the petition and met in joint meeting and signed the written agreement called for by the statute, that if the voters of the proposed district should declare by their vote in favor of the organization of the district they would co-operate and call an election for a board of education, and agreed upon the time when that election should be called and that notice should be given. The vote was had and a large majority of the voters of the district voted for it. When that was done, each of the boards of the two townships met, and concurrently, but separately, passed the resolutions contained in the statement of this case, by which they recited the facts of the petition and agreement under it by the two boards, the election and its

result, (all as whereases,) and then resolved that they would "co-operate together for the purposes hereof; that a special election be and is hereby called to be held within said district No. 1, in township 39, range 13, and district No. 8, in township 39, range 12, Cook county, Illinois, comprising the parts of said townships so voting to establish a township high school, for the purpose of electing a township board of education consisting of five members;" then proceeded to fix the time for the election, the place of voting, and directed their respective treasurers to co-operate together in giving the notices of the election. Was not this the co-operation of the voters and the boards of trustees that was in the minds of the law-makers when they enacted this statute? Such seems to us to be the true interpretation and meaning of the statute.

It is insisted, however, that, granting that the district might be organized, still there is no authority given for the election in this district of a board of education, and it is argued that inasmuch as by the original act to which this section 42 was a proviso the board of trustees of the town should be vested with the powers of school directors, and that because this section was simply re-enacted as a section of the present statute and not a proviso, it shall be read and construed as it was originally passed. If we understand this argument, it is, that notwithstanding the fact when the revision of the law was had section 41, *supra*, was enacted, by which, for the purpose of exercising the powers of building the school house, supporting the school and paying the expenses thereof, the board of education was substituted for the board of trustees, we are still to read and construe this act as authorizing boards of trustees to act as directors for the newly formed district, and we are cited to section 2 of chapter 131. (Hurd's Stat. 1899.) That section is: "The provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such prior provisions, and not

as a new enactment." We have already adverted to the fact that what is now section 42 was never a section in any statute until the revision of the laws in 1889. It was merely a proviso to a section that was not re-enacted. It had received no previous construction, and could not, in any reason, now be construed as though the main section to which it was a proviso was written in the act.

We are also cited to *Mette* v. *Feltgen*, 148 Ill. 357, where on page 367 this statutory rule of construction is quoted and applied. On page 366 of the same case and Report we find this rule stated: "It has been held, and we think correctly, that where there are repugnant provisions in a revised code, those portions which are transcribed from later statutes must be deemed to repeal sections adopted earlier or transcribed from earlier statutes, or to so modify them as to produce agreement between such repugnant provisions." On the same page we find a further rule: "All the several sections on the same subject should be construed together. By being embraced in the code they are formed into a system on the subject to which they refer, and by the adoption of the code the legislature has, as it were, laid its hands on them and given them new life and vitality as a body. For this reason, if for no other, they should be interpreted and construed together, and, if possible, made consistent and in harmony with each other."

Taxation is necessary for the raising of the revenue for this school. In order that the necessary taxes may be levied somebody must be vested with power to levy them. Section 41 says that in the case of township high schools the board of education shall levy the tax, and section 42 says that "in like manner" these schools may be established and maintained in parts of two townships. If the expression "in like manner" is to be given any meaning at all it must relate to something that has preceded it. The provision that immediately precedes it in this act is the one vesting in the board of education the

power to build the school house, support the school and pay the necessary expenses. We think, however, that that expression is not confined alone in its reference to section 41, but that it relates back to all the provisions of the act that can apply to the formation of the district and the establishment of the school by taking the parts of two townships. Under this district organization the election of the board of education was held, and they organized; the terms of two of them expired and they were re-elected; a school house, at a rental of $5000 a year, was provided and a school established; $30,000 levied and expended and this levy of $30,000 more made, so that both a *de facto* corporation and *de facto* officers, at least, are shown to exist. If there was authority under the law to organize this high school district, and if there was like authority to elect a board of education for that district, then the right of the existence of this district or the legal existence of the board of education cannot be questioned in this collateral proceeding. (*Trumbo* v. *People*, 75 Ill. 561; *Blake* v. *People*, 109 id. 504; *School Directors* v. *School Directors*, 135 id. 464; *Evans* v. *Lewis*, 121 id. 478; *Aldis* v. *South Park Comrs.* 171 id. 424; *People* v. *Knopf*, 183 id. 410.) In this case, however, no question is made as to the regularity of the election of the board. The whole question grows out of the contention on the part of appellant that there is no authority whatever for its existence. It further appears that the State's attorney of Cook county, before whom the record was laid, declined to interfere by *quo warranto* with the organization of this district, and that upon the hearing of the injunction suit involving the remission of $10,000 of the levy of 1899, to which all the tax-payers in the district were parties, and in which $10,000 of the tax was ordered to be abated and $30,000 to be paid, followed by the averment that the $30,000 was paid by all the tax-payers in the district, according to their assessments, all seem to us,

together with the other acts adverted to, to clearly establish a *de facto* corporation and *de facto* officers.

Entertaining the view we do, we are of opinion that there was no error in the action of the circuit court of Cook county, and its judgment is affirmed.

*Judgment affirmed.*