0 LRA322n

HENRY METTE *et al.*

*v.*

ANNA M. FELTGEN.

*Filed at Ottawa January 16, 1894.*

| 148 | 357 |
| 165 | 333 |
| 148 | 357 |
| 174 | 200 |
| 148 | 357 |
| 179 | 568 |
| 148 | 357 |
| 193 | 12258 |

1. INFANT—*disaffirmance of deed.* Where an infant, after attaining majority, expressly revokes and disaffirms a deed made by him or her during minority, it may be disregarded, and the rights of the parties will be determined the same as though the deed had never been made.

2. JOINT TENANCY AND TENANTS IN COMMON—*words in deed creating joint tenancy.* A deed of land to a man and his wife, "not as tenants in common, but as joint tenants," creates in the grantees an estate in joint tenancy, with the right of survivorship.

3. SAME—*presumption in favor of.* Where an estate was conveyed to a plurality of persons, without adding any restrictive, exclusive or explanatory words, the conveyance, at common law, was held to constitute the grantees joint tenants and not tenants in common, it being necessary, in order to create a tenancy in common by deed, to add exclusive or explanatory words, so as to expressly limit the estate to the grantees, to hold as tenants in common, and not as joint tenants.

4. SAME—*act of 1821—its effect on common law rule.* The act of 1821, "concerning partition and joint rights and obligations," undertook to deal only with joint tenancies and tenancies in common, held by the tenants in their own rights or in right of their wives. It had no application to estates held by executors, trustees or others holding estates *in autre droit.*

5. As to estates held by the tenants in their own rights or in right of their wives, whether held as joint tenants or tenants in common, the act gave the right to compel partition, and in cases of joint tenancies, if partition was not made, the right of survivorship was taken away, and it was provided that the part of the tenant dying first should pass by descent or devise, and be subject to debts, dower, charges, etc., and be transmissible to executors or administrators, and be considered, for every intent and purpose, in the same view as if the deceased joint tenant had been a tenant in common.

6. The effect of this statute was to practically abolish joint tenancies when the estates were held by the tenants in their own rights or in the right of their wives, or that which is the same thing, to convert them into tenancies in common. The right of survivorship was taken away, and upon the death of the tenant without having made partition, the estate was to be treated, to every intent and purpose, as a tenancy in common.

7. SAME—*act of 1827—its effect on joint tenancies.* The effect of the act of 1827, entitled "An act concerning conveyances of real property," was to restore the right to create estates in joint tenancy as known at common law, in so far as that right was abrogated by the act of 1821. It also undertook to change the rule of presumption obtaining at common law when a conveyance of lands was made to two or more persons.

8. By section 5 of the act of 1827, which is now section 5 of the present Conveyance act, this rule, except in cases of conveyances to executors or trustees, was precisely reversed. Under that section a conveyance to two or more persons, without restrictive or explanatory words, created a tenancy in common, and in order to create a joint tenancy the estate had to be declared to pass, not in tenancy in common, but in joint tenancy.

9. There is nothing in the act of 1827 furnishing the least indication that the legislature intended to attach to joint tenancies, when the tenants held in their own rights, any other or different incidents than those which properly belonged to the estate when executors or trustees were the tenants. It was the intention of the act that the interest of survivorship should prevail, whether the tenants held in their own rights or in the right of others.

10. SAME—*joint tenancy—the statutes considered.* By preserving the provisions of the acts of 1821 and 1827 in the several revisions of the statutes, these two acts still sustain the same relation to each other which existed prior to the revisions of 1845 and 1874, and are to be construed now the same as they would have been construed prior to the revision in 1845. Therefore the act of 1827 must still be regarded as repealing or modifying the act of 1821, to the extent of permitting parties to create the common law estate of joint tenancy, with its common law incidents, by expressly declaring in the deed running to two or more grantees, that the estate conveyed shall pass, not in tenancy in common, but in joint tenancy.

11. It would seem that the re-enactment of the acts of 1821 and 1827, without change of phraseology, in the revision of 1845, and again in the revision of 1874, was intended as a re-adoption of the statutory law on the subject in precisely the same condition in which it was before any revision was made.

12. CONSTRUCTION OF STATUTES—*revision—prior statutes, etc.* Where there are repugnant provisions in a revised code, those portions which are transcribed from later statutes must be deemed to repeal sections adopted earlier or transcribed from earlier statutes, or to so modify them as to produce agreement between such repugnant provisions.

13. Section 2 of chapter 131 of the Revised Statutes of 1874, which provides that "the provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of

such prior provisions, and not as a new enactment," furnishes a rule of construction applicable to our present Revised Statutes. Under it, a statute gains no additional force by being included in a revision, but is only continued as a part of our statutory law, having the same force and effect as before.

14. Section 5 of chapter 30 of the Revised Statutes, entitled "Conveyances," and section 1 of chapter 76, entitled "Joint rights and obligations," being *in pari materia,* are to be construed together, and with reference to the prior legislation on the subject therein referred to.

APPEAL from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Mr. ARNOLD TRIPP, and Messrs. WILSON, MOORE & MCILVAIN, for the appellants.

Mr. MARTIN A. DELONG, and Mr. WILLIAM H. MOHRMAN, for the appellee.

Mr. THEODORE H. SCHINTZ, as *amicus curiæ.*

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was an action of ejectment, brought by Anna M. Feltgen against Henry, August and Louis Mette, to recover the undivided one-half of lots 8 and 9, in block 5, in Murray's addition to South Chicago. The defendants pleaded not guilty, and the cause being tried by the court, a jury being waived, it was found that the plaintiff was the owner in fee of an undivided one-half of the lots, and that the defendants were guilty of unlawfully withholding possession thereof from her. A motion by the defendants for a new trial being overruled, judgment was entered that the plaintiff recover possession of the undivided one-half of the lots, and that a writ of possession issue in her favor therefor. The defendants bring the record to this court by appeal.

The facts are all admitted by stipulation, and are, in substance, as follows: On the 23d day of April, 1878, Theodore H. Schintz, the common source of title of the plaintiff and

defendants, executed and delivered to Peter Mayer and Anna Mayer his wife, a deed which, omitting the signature and certificate of acknowledgment, is as follows:

"This indenture witnesseth, that the grantor, Theodore H. Schintz, a bachelor, of the city of Chicago, in the county of Cook and State of Illinois, for the consideration of one dollar, conveys and quit-claims to Peter Mayer and Anna Mayer his wife, not as tenants in common but as joint tenants, of the city of Chicago, county of Cook and State of Illinois, all interest in the following described real estate, to-wit, lots eight and nine, in block five, in Murray's addition to South Chicago, situated in the county of Cook and State of Illinois, hereby releasing and waiving all right under and by virtue of the homestead and exemption laws of this State. Dated this twenty-third day of April, 1878."

Anna Mayer, one of the grantees in the deed, died intestate April 4, 1879, leaving surviving her her husband and co-grantee, and also leaving the plaintiff, her daughter by a former marriage and her only heir at law, who was then a minor between eleven and twelve years of age. On the 16th day of February, 1882, Peter Mayer executed a deed conveying the lots to August Mette and Henry Mette, and on the same day the plaintiff, then being a minor between fourteen and fifteen years of age, executed a deed by which, for an expressed consideration of fifty dollars, she conveyed and quit-claimed to August and Henry Mette, all her interest in the lots. On the 11th day of September, 1885, the plaintiff attained the age of eighteen years, and on the 15th day of June, 1888, she executed, acknowledged and recorded an instrument expressly revoking, annulling and declaring void her deed executed during her infancy, and July 13, 1888, as a further act of disaffirmance, she instituted this suit, and shortly thereafter commenced a suit in chancery to set the deed aside and to recover her interest in the lots. August and Henry Mette, immediately after the execution of the deeds to them,

together with their co-defendant Louis Mette, took possession of the lots and excluded the plaintiff therefrom, and were in possession thereof, to the exclusion of the plaintiff, at the time of the commencement of this suit, and are still in possession. On the 12th day of January, 1884, August and Henry Mette executed to Louis Mette a deed by which they conveyed to him a fractional interest in the lots.

The conveyance by the plaintiff to August and Henry Mette made during her minority, having been expressly revoked and disaffirmed by her after becoming of age, may be disregarded, and the rights of the parties are to be determined precisely as though no such conveyance had been made. The claim of the defendants is, that the estate of Peter Mayer and Anna Mayer his wife in the lots was a joint tenancy, with the common law incident of survivorship, and consequently that, upon the death of Anna Mayer, Peter Mayer, by right of survivorship, became tenant of the lots in severalty, to the exclusion of the heir at law of Anna Mayer, and that Peter Mayer's conveyance of the lots to August and Henry Mette, vested in them the entire estate. The plaintiff, on the other hand, insists that, whether the deed from Schintz to Peter Mayer and wife created a joint tenancy or not, it was, under our statute, a tenancy in respect to which there was no right of survivorship, and therefore that, on the death of Anna Mayer, her joint interest descended to and became vested in the plaintiff as her sole heir at law.

There can be no doubt that the parties in the Schintz deed intended thereby to create an estate in joint tenancy and not a tenancy in common, and it must be admitted, we think, that the language employed was apt and sufficient for the accomplishment of that purpose. It only remains to be determined whether, under our statutes, the right of survivorship can still be regarded as an incident of an estate in joint tenancy.

The doubt on this question grows out of the apparent conflict between section 5, chapter 30, of the Revised Statutes,

entitled "Conveyances," and section 1, of chapter 76, entitled "Joint Rights and Obligations." These statutes are *in pari materia,* and are to be construed together, and very much aid in such construction may be obtained, by examining their history, as a part of the legislation of the State.

On the 15th day of January, 1821, the General Assembly passed "An Act concerning partitions and joint rights and obligations," the first and second sections of which were as follows :

"Section 1. *Be it enacted, etc.,* that all joint tenants or tenants in common who now are or hereafter shall be possessed of any estate of inheritance, or estate less than those of inheritance, either in their own rights or in the right of their wives, may be compelled to make partitions between them of such lands, tenements or hereditaments as they now hold or hereafter shall hold as joint tenants or tenants in common : *Provided, however,* that no such partition between joint tenants or tenants in common who hold or shall hold estates for life or years, with others holding equal or greater estates, shall prejudice any entitled to the reversion or remainder after the death of the tenants for life or after the expiration of the years.

"Sec. 2. That if partition be not made between joint tenants, the parts of those who die first shall not accrue to the survivor or survivors, but descend or pass by devise, and shall be subject to debts, dower, charges, etc., or transmissible to executors or administrators, and be considered, to every intent and purpose, in the same view as if such deceased joint tenants had been tenants in common."

Afterwards, on January 31, 1827, the General Assembly passed "An Act concerning Conveyances of Real Property," the fifth section of which was as follows :

"No estate in joint tenancy, in any lands, tenements, or hereditaments, shall be held or claimed under any grant, devise or conveyance whatever, heretofore or hereafter made, other than to executors and trustees, unless the premises

therein mentioned shall expressly be thereby declared to pass, not in tenancy in common, but in joint tenancy; and every such estate, other than to executors or trustees, (unless otherwise expressly declared as aforesaid), shall be deemed to be a tenancy in common."

In the Revised Statutes of 1845, section 2 of the act of 1821 appears as section 1 of chapter 56, entitled "Joint Rights and Obligations," while section 5 of the act of 1827 appears as section 5 of chapter 24, entitled "Conveyances," both chapters having been approved on the same day. In the Revised Statutes of 1874, section 2 of the act of 1821 again appears as section 1 of "An Act to Revise the Law in relation to Joint Rights and Obligations," approved February 25, 1874, and in force July 1, 1874, and section 5 of the act of 1827 appears as section 5 of the "Act concerning Conveyances," approved March 29, 1872, and in force July 1, 1872. Both sections have now been on the statute books concurrently since 1827, and both, since their original enactment, have been twice included, without change of phraseology, in general revisions of the statutes.

It seems plain that the act of 1821 undertook to deal only with joint tenancies and tenancies in common held by the tenants in their own rights, or in right of their wives. Such is the express limitation contained in the language of section 1, and that limitation undoubtedly was intended to apply to and control the entire act. No other tenancies were within the legislative contemplation. The act therefore had no application to estates held by executors, trustees, or others holding estates *in autre droit.* But as to estates held by the tenants in their own rights or in right of their wives, whether held as joint tenants or tenants in common, the act gave the right to compel partition, and in cases of joint tenants, if partition was not made, the right of survivorship was taken away, and it was provided that the part of the tenant dying first should pass by descent or devise, and be subject to debts, dower,

charges, etc., and be transmissible to executors or administrators, and be considered to every intent and purpose in the same view as if the deceased joint tenant had been a tenant in common.

The effect of this statute clearly was, to practically abolish joint tenancies where the estates were held by the tenants in their own rights or in right of their wives, or, that which is the same thing, to convert them into tenancies in common. The right of survivorship, which is and always has been the principal and distinguishing incident of joint tenancies was taken away, and upon the death of the tenant without having made partition, the estate was to be treated and considered, to every intent and purpose, as a tenancy in common.

The act of 1827 made no reference to that of 1821, but as it was the later expression of the legislative will, it had the effect of repealing or modifying the former act, in so far as it was inconsistent therewith. It becomes important then, in the first place, to determine the proper interpretation to be placed upon that act, standing by itself. In using without explanation or qualification the terms "joint tenancy" and "tenancy in common," terms having at common law a fixed and well understood meaning, it was doubtless intended to use them in their ordinary common law sense. Its effect was to restore the right to create estates in joint tenancy, as known at common law, in so far as that right was abrogated by the act of 1821, rather by tacit recognition than by express words, and then undertook to change the rule of presumptions obtaining at common law, where a conveyance of lands was made to two or more persons. Where an estate was conveyed to a plurality of persons without adding any restrictive, exclusive or explanatory words, such conveyance, at common law, was held to constitute the grantees joint tenants and not tenants in common, it being necessary, in order to create a tenancy in common by deed, to add exclusive or explanatory words, so as to expressly limit the estate to the grantees, to

hold as tenants in common and not as joint tenants. 2 Black. Com. 180, 193. By section 5 of the act of 1827, this rule, except in cases of conveyances to executors or trustees, was precisely reversed. Under that section, a conveyance to two or more persons, without restrictive or explanatory words, created a tenancy in common, and in order to create a joint tenancy, the estate had to be expressly declared to pass, not in tenancy in common but in joint tenancy. If the question had arisen at any time after the passage of the act of 1827 and prior to the revision of 1845, it would have presented no material difficulty. The rule established by the act of 1827 would have been held to prevail, that being the latest act, and as that act clearly recognized the existence of estates in joint tenancy, a well known species of common law estates, and expressly provided the mode in which they might be created, the result would have logically followed, that joint estates created in the manner prescribed were joint tenancies in the common law sense, and possessing the qualities and incidents which the common law attaches to them, notwithstanding the provisions of the act of 1821 to the contrary.

The view that the estate in joint tenancy referred to in the act of 1827 was the common law estate, with its common law incidents, is strengthened by reference to the provisions of the act in relation to the tenancy when vested in executors or trustees. As we have already seen, tenancies of that character are not within the purview of the act of 1821, nor affected by its provisions. They were doubtless excluded from the operation of that act, on account of the manifest impropriety of compelling partition between joint tenants holding in a trust capacity, and the obvious advantages resulting from an application of the rule of survivorship to joint tenants of that character. The act of 1827 also expressly excepts from its operation executors and trustees, thus keeping in force as to them the common law rule, but provides that in other cases, to create a joint tenancy, it must be expressly declared in the

deed to be such and not a tenancy in common. But there is nothing in the act of 1827 furnishing the least indication that the legislature intended to attach to joint tenancies where the tenants held in their own right, any other or different incidents, than those which properly belonged to the estate where executors or trustees were the tenants. It is beyond question that in the latter class of joint tenancies, it was the intention of the act that the incident of survivorship should prevail, and as the act furnishes no indication to the contrary, it would seem to be equally clear, that the same rule was intended to apply to those where the tenants were such in their own right.

Up to the passage of the Revised Statutes of 1845, the law on the subject, so far as it was declared by statute, was to be found in the act of 1821, as modified by the act of 1827, the latter act prevailing and furnishing the rule in all matters where the two were inconsistent with each other. It would seem therefore that the re-enactment of these two statutes, without change of phraseology, in the revision of 1845, and again in the revision of 1874, was intended as a re-adoption of the statutory law on the subject in precisely the condition in which it was before any revision was made. It has been held, and we think correctly, that where there are repugnant provisions in a revised code, those portions which are transcribed from later statutes must be deemed to repeal sections adopted earlier, or transcribed from earlier statutes, or to so modify them as to produce agreement between such repugnant provisions. Endlich on Interpretation of Statutes, sec. 183. In *Ex parte Ray*, 45 Ala. 15, a Revised Code had been enacted embracing various prior statutes enacted at different times, and in giving construction to a particular portion of such Code, it was said: "All the several sections on the same subject should be construed together. By being embraced in the Code, they are formed into a system on the subject to which they refer, and by the adoption of the Code, the legislature has, as it were, laid its hands on them and given them new life

and vitality, as a body. For this reason, if for no other, they should be interpreted and construed together, and if possible, made consistent and in harmony with each other. If, however, this, in any particular case, can not be done, then the earlier sections, or sections taken from earlier acts, must be held to be repealed, or so modified as to be in agreement with the later sections." See also, *O'Niel* v. *Robinson,* 45 Ala. 526 ; *State* v. *Heidborn,* 74 Mo. 410.

Section 2, chapter 131, of the Revised Statutes of 1874, is as follows : "The provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such prior provisions, and not as a new enactment." As applicable to our present Revised Statutes, this section furnishes a rule of construction. ·Under it, as it would seem, a statute gains no additional force by being included in a revision, but is only continued as a part of our statutory law having the same force and effect as before. Under this rule, the fact that one of the statutes now under consideration was re-enacted more recently than the other in the revision of 1874, is immaterial, as in both cases an old statute was continued in force, and no new one enacted.

Under these circumstances, we are disposed to hold that the two statutes under consideration still sustain to each other the same relation which existed prior to the revision of 1845, and that they should be construed now the same as they would have been construed prior to that revision. As a consequence, the act of 1827 must still be regarded as repealing or modifying the act of 1821, to the extent of permitting parties to create the common law estate of joint tenancy, with its common law incidents, by expressly declaring in a deed running to two or more grantees, that the estate conveyed shall pass, not in tenancy in common, but in joint tenancy.

Applying these conclusions to the case before us, it follows that, upon the death of Anna Mayer intestate, her share passed to her husband by right of survivorship, and that he

thereby became vested with the entire estate as tenant in severalty. It follows that no estate or interest in the land passed by inheritance to Anna M. Feltgen, the plaintiff, on the death of her mother, but that the conveyance from Peter Mayer to the defendants vested in them the entire estate. The plaintiff having failed to establish any interest in the land, the judgment in her favor is erroneous. It will therefore be reversed and the cause will be remanded to the Superior Court.

*Judgment reversed.*

Separate opinion by Mr. JUSTICE MAGRUDER:

Of the two sections of the Statute under consideration in this case, that adopted in 1821 is now in force as section 1 of the Act in regard to joint rights and obligations, and that adopted in 1827 is now in force as section 5 of the Conveyance Act. The re-adoption of these two sections by the legislature, at several different times since their original passage, indicates an intention, on the part of the law-making power, that they should both stand together, and that the one should not operate as a repeal of the other. There is no necessary conflict between them. They can be so construed as to harmonize with each other. Section 1 refers to both personal and real property; section 5 refers to real property alone. Section 1, standing by itself, is broad enough to abolish the right of survivorship as between joint tenants, and to convert the estate of joint tenancy into an estate of tenancy in common. But section 5 was evidently intended to be a qualification of the broad rule laid down in section 1, so far as lands, tenements and hereditaments are concerned, and was designed to limit the application of the rule to cases where the grant, devise or conveyance did not, in express terms, create an estate of joint tenancy. Section 5 is merely a recognition of the rule, that the law will effectuate the intention of parties where such intention is clearly manifest, whether in wills, deeds or contracts. It is a mistake to suppose that the estate

of joint tenancy has been prohibited by our statute. The creation of such an estate is not forbidden. It does not exist by operation of law, but it may exist by the express declaration of the parties. No other construction can be given to the language of section 5. By the terms of that section, an estate in joint tenancy may be held in lands under a conveyance, where the premises mentioned in the conveyance are thereby expressly *"declared to pass, not in tenancy in common, but in joint tenancy."* Joint tenancy shall be deemed to be tenancy in common, "unless otherwise expressly declared," except of course where the grant or devise is to executors and trustees. The law will construe the estate to be a tenancy in common, and not a joint tenancy, where no contrary intention is expressly declared in the instrument; but where the instrument expressly declares that the land shall pass, not in tenancy in common, but in joint tenancy, the law will permit the estate in joint tenancy to exist.

It will not do to say, that section 1 abolished the right of survivorship, and that section 5 merely permitted a joint tenancy without the right of survivorship to be created by an express declaration in the devise, grant or conveyance. "The doctrine of survivorship, or *jus accrescendi*, is the distinguishing incident of title by joint tenancy; and, therefore, at common law, the entire tenancy or estate, upon the death of any of the joint tenants, went to the survivors." (4 Kent's Com. *360.) It can hardly be presumed, that the legislature, in authorizing an estate by joint tenancy to be created by an express declaration in the grant or devise, referred to those technical joint-tenancies arising from the unities of time, title, interest and possession. If such a construction of section 5 is to prevail, then no right of survivorship was reserved to executors and trustees by that section. In both sections 1 and 5, joint tenancy is spoken of as the antithesis of tenancy in common, and the distinguishing feature of the latter is, that a tenant in common is, as to his own undivided share,

24—148 ILL.

precisely in the position of the owner of an entire and separate estate. In Kent's Commentaries we find the following: "In New York * * * estates in joint tenancy were abolished, except in executors and other trustees, unless the estate was expressly declared, in the deed or will creating it, to pass in joint tenancy. * * * In the States of Maine, * * * *Illinois* and Delaware joint tenancy is placed under the same restrictions as in New York; and it cannot be created but by express words; and, when lawfully created, *it is presumed that the common law incidents belonging to that tenancy follow.*" (4 Kent's Com. *361 and *362.) It follows, that the estate in joint tenancy, which may be expressly declared to exist by section 5, includes the right of survivorship as one of its common law incidents.

In *Arnold* v. *Jack's Executors*, 24 Penn. St. 57, the Supreme Court of Pennsylvania, in commenting upon a statute of that State, whose language is the same as that of said section 1, say: "It is a question worthy of consideration whether the provisions of the Act * * * apply to a joint tenancy created by express words in a devise." That is to say, it is a question worthy of consideration whether the provisions of section 1 would apply where the joint tenancy was created by express words in the grant or devise, even if that section had stood alone, and section 5 had never been enacted.

In commenting upon the legislation in reference to joint-tenancy, Pomeroy, in his work on Equity Jurisprudence, says: "This legislation, throughout all the States, has declared that a conveyance of land to two or more grantees, shall, *unless a contrary intention is clearly expressed,* create an ownership in common and not a joint ownership." (1 Pom. Eq. Jur. sec. 408.)

In *Stimpson* v. *Batterman*, 5 Cush. 153, the devise was to the "children and survivor or survivors of them," and it was held that these were apt words to create an estate of joint tenancy, and that the children took as joint tenants.

In *Mittel* v. *Karl*, 133 Ill. 65, it was held, that a deed to a man and his wife, and "the survivor of them in his or her own right," gave to the grantee, dying first, an estate for life with remainder in fee to the survivor. What is the substantial difference between deeding or devising land to two persons and the survivor of them, and deeding or devising land to two persons to be held in joint tenancy? The distinguishing feature of joint tenancy is the right of the survivor to take the whole estate. If the Statute does not prohibit the conveyance or devise of land to two persons and the survivor of them so as to give the survivor the right to take the whole estate, it is difficult to see why the statute should be construed as prohibiting land from being held in joint tenancy so far as the right of survivorship is involved in joint tenancy, if the deed or devise expressly declares that such land shall be held in joint tenancy and not in tenancy in common. Evidently the Statute does not prevent parties from conveying or devising their lands so as to enforce the right of survivorship, provided they indicate their intentions by clear and express declarations in the deed or will.

The question here discussed has never before been fully and fairly presented to this Court as arising directly out of the facts involved. If, in any decisions heretofore made, expressions have been made use of which are seemingly at variance with these views, such expressions cannot be regarded otherwise than as mere *dicta*.

It follows from what has been said, that the deed from Schintz to Peter Mayer and Anna Mayer so far conveyed to them an estate in joint tenancy as that Peter Mayer, the survivor, took the whole title in fee to the lots after the death of his wife. Therefore, the judgment below should have been for the defendants.