LABORER'S INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 1280, Petitioner, v. ILLINOIS STATE LABOR RELATIONS BOARD et al., Respondents.

Fifth District   No. 5—85—0313

Opinion filed April 9, 1987.—Rehearing denied May 19, 1987.

John M. Hosteny, of Cavanagh, Hosteny & O'Hara, of Springfield, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Charles S. Watson, Assistant Attorney General, of counsel), for respondent Illinois State Labor Relations Board.

John A. Piper, of Massey, Anderson & Gibson, of Paris, for respondent City of Robinson.

JUSTICE KASSERMAN delivered the opinion of the court:

The instant appeal is a direct review of an order of the Illinois State Labor Relations Board. On April 5, 1985, the Illinois State Labor Relations Board (Board) issued a final written decision dismissing the representation petition of Laborer's International Union of North America, Local 1280 (union), finding that the Board was without jurisdiction in the matter. On May 8, 1985, the union filed its timely petition for review of that decision. The city of Robinson, Illinois (city), and the Board have moved to dismiss the union's petition for lack of subject matter jurisdiction. Pursuant to our order of June 28, 1985, the issues raised by those motions were ordered to be taken with the case. Accordingly, before addressing the facts and merits of this appeal, we shall direct our attention first to the issue of subject matter jurisdiction.

Both the Board and the city contend that this court should not and cannot reach the merits of the union's appeal because this court lacks jurisdiction of the subject matter of the case for the reason that the instant action does not involve an unfair-labor-practice charge and is therefore not reviewable pursuant to section 11(e) of the Illinois Public Labor Relations Act (Act or State Act) (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1601 et seq.). The city and the Board (respondents) contend that pursuant to the Act, only matters involving an unfair-labor-practice charge are reviewable and that representation/certification proceedings are not.

This is a matter of first impression in Illinois. In addressing this

matter, we turn first to section 11 of the Act, which provides in pertinent part as follows:

"Sec. 11. Unfair Labor Practice Procedures.
Unfair labor practices may be dealt with by the Board in the following manner:

\* \* \*

(e) A charging party or any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may apply for and obtain judicial review of an order of the Board entered under this Act, in accordance with the provisions of the Administrative Review Law, as now or hereafter amended, except that such judicial review shall be afforded directly in the appellate court for the district in which the aggrieved party resides or transacts business. The Board in proceedings under this Section may obtain an order of the court for the enforcement of its order.

(f) Whenever it appears that any person has violated a final order of the Board issued pursuant to this Section, the Board must commence an action in the name of the People of the State of Illinois by petition, alleging the violation, attaching a copy of the order of the Board, and praying for the issuance of an order directing the person, his officers, agents, servants, successors, and assigns to comply with the order of the Board. The Board shall be represented in this action by the Attorney General in accordance with 'An Act in regard to attorneys general and state's attorneys', approved March 26, 1874, as amended. The court may grant or refuse, in whole or in part, the relief sought, provided that the court may stay an order of the Board in accordance with the Administrative Review Law, pending disposition of the proceedings. The court may punish a violation of its order as in civil contempt.

(g) The proceedings provided in paragraph (f) of this Section shall be commenced in the circuit court in the county where the unfair labor practice which is the subject of the Board's order was committed, or where a person required to cease and desist by such order resides or transacts business." (Ill. Rev. Stat., 1984 Supp., ch. 48, pars. 1611(e), (f), (g).)

The city and the Board assert that the only mention of a review of Board orders is found in section 11(e) of the Act, which the city and the Board contend deals exclusively with the procedure to be used in unfair-labor-practice disputes. The city and Board urge that the placement of this clause is not fortuitous, but rather is based upon the

clear intent of the legislature to follow the National Labor Relations Act (NLRA) (29 U.S.C. secs. 151 through 168 (1982)) precedent.

The city and the Board contend that section 11 of the State Act is analogous to section 10 of the NLRA (29 U.S.C. sec. 160 (1980)). Except for certain unusual cases, the NLRA has been consistently interpreted to allow review of representation/certification proceedings only by way of a party's resistance to an unfair-labor-practice charge. (See *AFL v. NLRB* (1940), 308 U.S. 401, 84 L.E. 347, 60 S. Ct. 300; *Boire v. Greyhound Corp.* (1964), 376 U.S. 473, 11 L. Ed. 2d 849, 84 S. Ct. 894.) In *AFL v. NLRB*, the Supreme Court noted that the National Labor Relations Board (NLRB) was given two principal functions to perform by the NLRA: (1) the certification of bargaining representatives for an appropriate unit of employees (29 U.S.C. sec. 159 (1982)) and (2) the prevention of unfair labor practices (29 U.S.C. sec. 160 (1982)). (*AFL v. NLRB* (1940), 308 U.S. 401, 405, 84 L. Ed. 347, 350, 60 S. Ct. 300, 302.) The Supreme Court noted that the section of the NLRA which dealt with certification made no provision for review of such certifications, except in the single case where there was a petition for enforcement or review of an order restraining an unfair labor practice. (308 U.S. 401, 406, 84 L. Ed. 347, 350-51, 60 S. Ct. 300, 302.) The court noted that all the other provisions for review were to be found in section 10 of the NLRA (29 U.S.C. sec. 160 (1982)) which deals, exclusively, with unfair labor practices. The court then focused on section 10(f) of the NLRA, which deals with the review of unfair-labor-practice orders. The court noted that subsection (f) spoke only of a "final order of the Board" and that it was silent as to representation/certification proceedings. The court also noted that the statute established venue in the circuit court of appeal "wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business." (*AFL v. NLRB* (1940), 308 U.S. 401, 407-08, 84 L. Ed. 347, 351-52, 60 S. Ct. 300, 303.) The court then found that it was:

> "evident that the entire structure of the Act emphasizes, for purposes of review, the distinction between an 'order' of the Board restraining an unfair labor practice and a certification in representation proceedings.\*\*\* [Certification] authorized by section 9, is nowhere spoken of as an order, and no procedure is prescribed for its review apart from an order prohibiting an unfair labor practice.\*\*\* The statute on its face thus indicates a purpose to limit the review afforded by section 10 to orders of the Board prohibiting unfair labor practices, a purpose and a construction which its legislative history confirms." (308 U.S.

401, 409, 84 L. Ed. 347, 352, 60 S. Ct. 300, 304.)
The court recognized that this procedure of indirect review of certification procedures by way of unfair-labor-practice proceedings could cause some peculiar hardships, but also noted that this was an issue to be addressed by Congress and not the courts. 308 U.S. 401, 411-12, 84 L. Ed. 347, 353-54, 60 S. Ct. 300, 305.

The city and Board, respondents, contend that the reasoning of the Supreme Court in *AFL v. NLRB* is applicable to the instant action. Respondents contend that the Illinois State Labor Relations Board is also a "dual-purpose" Board in that section 9 of the State Act, which deals with the process of certification in representation proceedings, is complete unto itself and contains no provision for review, while sections 10 and 11 of the Act, on the other hand, deal with what are unfair labor practices and the procedures for dealing with them and provide for review in subsection (e) of section 11. Respondents contend that the language and the very structure of the Act make it clear that the State legislature intended to limit review of Board orders to cases involving unfair-labor-practice charges and that "final orders" for the purpose of judicial review must be limited to proceedings actually brought pursuant to and properly within section 11 of the Act. Respondents conclude that inasmuch as the instant action is in no way related to an unfair-labor-practice proceeding, this court lacks subject matter jurisdiction to consider the matter.

We note initially that the Federal courts' interpretations of a Federal statute are not binding upon the Illinois courts or legislature although when the State legislature passes a State statute based upon a Federal statute, the statute can presumably be interpreted in conformity with the decisions of the Federal courts rendered prior to the adoption of the statute. Further, it may be presumed that the legislature adopted the language it did with knowledge of the construction previously enunciated in the Federal courts. (See *Commonwealth Life & Accident Insurance Co. v. Board of Review of Department of Labor* (1953), 414 Ill. 475, 481-82, 111 N.E.2d 345, 348; see also 34 Ill. L. & Prac. *Statutes* sec. 135, at 128 (1958).) However, the converse of these principles of statutory construction is also true. Since it may be presumed that the legislature had knowledge of the Federal courts' construction of the Federal statute, the intent of the State legislature can be derived not only from the language actually adopted, but also from the language which was changed or not adopted. The fact that the State legislature specifically declined to adopt a certain section of the model Federal statute evidences an intent to achieve a result different from that announced by the decisions of the Federal courts.

Our review of the specific sections of the State Act and the NLRA which are pertinent to the issues herein discloses key dissimilarities. The first dissimilarity between the two acts is found in the respective provisions concerning appeals of orders of the respective boards. Section 11(e) of the State Act provides in pertinent part:

"A charging party or any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may apply for and obtain judicial review of an order of the Board entered under this *Act*, in accordance with the provisions of the Administrative Review Law, as now or hereafter amended, except that such judicial review shall be afforded directly in the appellate court for the district in which the aggrieved party resides or transacts business." (Emphasis added.) (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1611(e).)

The analogous provision in the NLRA is section 10(f), which provides in pertinent part:

"Any person aggrieved by a final order of the board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business ***." (29 U.S.C. sec. 160(f) (1982).)

The modification of section 10(f) of the NLRA by the State legislature indicates an intent not to restrict the appeal process enacted in section 11(e) of the State Act to apply only to final orders pertaining to unfair-labor-practice charges. The State legislature specifically provided that any person aggrieved by a final order of the Board entered under the Act can appeal.

Additional evidence of an intent not to restrict the appeal process is found in subsections (f) and (g) of section 11 of the State Act, which are specifically restricted to enforcement of violations of "a final order of the Board issued pursuant to this Section." In such case, the action "shall be commenced in the circuit court in the county where the unfair labor practice which is the subject of the Board's order was committed." (Ill. Rev. Stat., 1984 Supp., ch. 48, pars. 1611(f), (g).) Subparagraphs (f) and (g) of section 11 specifically pertain to enforcement of violations of final orders of the Board under section 11 pertaining to unfair labor practices. However, section 11(e) pertains to judicial review of final orders of the Board "entered under this Act." The State legislature thus purposefully did not adopt the language of section 10(f) of the NLRA in section 11(e), but could clearly have done so, as they did in sections 11(f) and (g).

The second dissimilarity between the State Act and the NLRA involves section 9(d) of the NLRA. Section 9(d) of the NLRA provides in pertinent part:

"Whenever an order of the Board made pursuant to section 160(c) of this title [prevention of unfair labor practices] is based in whole or in part upon facts certified following an investigation pursuant to subsection (c) of this section [representatives and elections] and there is a petition for the enforcement or review of such order, such certification and the record of such investigation shall be included in the transcript of the entire record required to be filed under subsection (e) or (f) of section 160 of this title [prevention of unfair labor practices], and thereupon the decree of the court enforcing, modifying, or setting aside in whole or in part the order of the Board shall be made and entered upon the pleadings, testimony, and proceedings set forth in such transcript." (29 U.S.C. sec. 159(d) (1982).)

The Supreme Court, in both the *AFL v. NLRB* case and the *Boire* case, relied upon this section of the NLRA in finding that Congress explicitly intended an indirect method of obtaining judicial review of certification proceedings by allowing the review only where the dispute concerning the correctness of the certification results in a finding by the Board that an unfair labor practice had been committed. The Supreme Court in *Boire*, after reviewing the legislative history, stated that the congressional policy for the indirect review was to prevent dilatory tactics in representation proceedings which might adversely affect the position of the parties in an election. *Boire v. Greyhound Corp.* (1964), 376 U.S. 473, 479, 11 L. Ed. 2d 849, 853-54, 84 S. Ct. 894, 898.

■ In reviewing the State Act, we find no provision which corresponds to section 9(d) of the NLRA indicating that the State legislature chose not to enact a similar provision, thus evidencing its intent to reach a result different than that arrived at under the NLRA. Inasmuch as *AFL v. NLRB* and *Boire* both rely upon section 9(d) of the NLRA for the result which they reached, we find them distinguishable. We accordingly find that if the decision of the Board issued on April 5, 1985, is a final order of the Board, this court has jurisdiction in the instant case pursuant to section 11(e) of the State Act.

We note that the union brings this action pursuant to the provisions of the Administrative Review Law (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*). Section 3—102 of the Administrative Review Law provides that the Act applies to and governs every action to judicially review a final decision of any administrative agency where the act

creating such agency, by express reference, adopts the provisions of the Administrative Review Law (Ill. Rev. Stat. 1983, ch. 110, par. 3—102). We note that the Illinois Public Labor Relations Act adopts the provisions of the Administrative Review Law in section 11(e) (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1611(e)). Furthermore, article VI, section 6, of the 1970 Constitution of the State of Illinois grants jurisdiction to the appellate court to directly review administrative decisions when provided by law. (Ill. Const. 1970, art. VI, sec. 6.) Additionally, Illinois Supreme Court Rule 335 sets forth the procedure for direct appeals of administrative decisions to the appellate court. (103 Ill. 2d R. 335.) Our jurisdiction is therefore determined by whether the decision of the Illinois State Labor Relations Board issued on April 5, 1985, is a final order of the Board.

Section 3—101 of the Administrative Review Law provides in pertinent part:

" 'Administrative decision' or 'decision' means any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency ***." (Ill. Rev. Stat. 1983, ch. 110, par. 3—101.)

As there is no dispute as to the status of the Illinois State Labor Relations Board as an administrative agency as defined by the Administrative Review Law, we must determine whether the decision of the Board issued on April 5, 1985, is a final "administrative decision" as defined in the Administrative Review Law. We note that the finality of an administrative decision under section 3—101 depends upon whether the agency's rules permit petitions for rehearings of their decisions. If the agency's rules permit a petition for rehearing, the agency's decision will not be final until the rehearing is completed or the petition for rehearing is denied. (See *Reiter v. Neilis* (1984), 125 Ill. App. 3d 774, 778, 466 N.E.2d 696, 699.) Inasmuch as the rules of the Board do not set forth any provisions for petitions for rehearing, this exception set forth in the Administrative Review Law is inapplicable to the case at bar.

■ We find that the decision of the Board issued April 5, 1985, is a final administrative decision which adversely affected the rights of the union and terminated the proceedings before the Board. The Board dismissed the representation petition which had been filed by the union and dismissed the case. The Board ruled that it had no jurisdiction in the matter and, therefore, not having jurisdiction, the Board could not conduct any proceedings whatsoever. There is no fur-

ther Board action which could be taken in the matter, and accordingly we find that the April 5, 1985, decision of the Board was a final order of the Board which is reviewable pursuant to section 11(e) of the Illinois Public Labor Relations Act. Having found that we have subject matter jurisdiction in this matter, we now turn to the merits of the case.

The relevant facts are as follows: On August 6, 1984, the Laborer's International Union of North America, Local 1280, filed a petition with the Illinois State Labor Relations Board seeking to certify the union as the representative of certain employees of the city of Robinson. The petition proposed a 14-employee unit, described as follows: "All full and part time maintenance and mechanic employees of the Street Department and Sanitation Department; janitor for the Community Center Building and secretary for the city employed at the City Hall, except those excluded by the Act."

On September 7, 1984, the city moved to dismiss the union's representation petition, alleging that section 20(b) of the Illinois Public Labor Relations Act deprived the Board of jurisdiction as the city did not employ 25 "employees" as that term was defined by section 3(m) of the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1603(m)). On December 17, 1984, the city provided the Board with a list of all of its employees and the reason claimed by the city that individual employees were excluded as "public employees" pursuant to section 3(m) of the Act. Of the 98 employees listed, the city claimed the following exclusions: 11 employees were excluded as elected officials; one employee excluded as an independent contractor; seven employees on the sole ground that they were peace officers; 31 employees on the sole ground they were firefighters; two employees on the sole ground that they were confidential employees; nine employees on combined grounds that they were managerial/confidential/supervisory/department heads/peace officers or firefighters; and 27 employees excluded as short-term employees. The remaining 10 employees whom the city did not claim to be excluded from the definition of public employees were listed as a janitor and also as individuals working for the street and sewer departments of the city.

On January 11, 1985, a hearing on the union's petition was held in Springfield pursuant to the Act and the rules and regulations of the Illinois Labor Relations Board before a hearing officer duly appointed by the Board. At that hearing, the parties stipulated to the following facts:

> 1. That the city of Robinson is a public employer within the meaning of section 3(n) of the Act. By so stipulating, however,

the city did not waive its contention that it does not employ 25 public employees as that term is defined in section 3(m) of the Act and that, therefore, it is not subject to the jurisdiction of the Board.

2. That the union is a labor organization within the meaning of section 3(i) of the Act.

3. That there is no history of collective bargaining in the petitioned-for unit and that there is no contract bar to the holding of an election in the unit.

4. That the following individuals were elected officials and, therefore, excluded from the definition of public employee within the meaning of section 3(m) of the Act: Mayor Richard Morris; Aldermen Robert Berty, John Goff, William McMillen, Robert Manning, David Saad, Terry Schmidt, and Jimmy Rogers; City Clerk Norma Mutchmore; and Treasurer JoAnn Flynn.

At the hearing, testimony was elicited concerning the respective employment duties of most, if not all, of the city's employees. A detailed recitation of the respective duties of all of the employees is not necessary for purposes of this appeal; therefore, we shall limit our discussion to those positions in dispute.

The only witness at the hearing was Richard Morris, the mayor of the city of Robinson. Mr. Morris testified concerning the city's hiring of part-time help in the summer in the street, sewer, and parks departments. Part-time employees hired for the summer are not guaranteed a job the following year with the city but must reapply as a new employee. In deciding whether to rehire such an individual, consideration would be given an employee who had worked for the city on a part-time basis previously if they had been a good employee. There was a high possibility that individuals working in the parks department during the summer months at the city swimming pool would be rehired due to the State requirement that such individuals have senior lifesaving certificates. All eight lifeguards employed in the 1984 summer season or on a part-time basis were previously employed in the 1983 season. Of the four individuals listed as working part time in the 1984 summer season with the street department, two had worked in 1983. Of the three employees listed as working part time in the 1984 summer season with the sewer department, all three previously had worked in 1983 for the city.

Mr. Morris was unable to state whether the city would agree to permit its supervisory employees to form a bargaining unit should they so request.

On February 26, 1985, the hearing officer's recommended decision and direction of election was issued. The hearing officer ruled that the city employed fewer than 25 "public employees" as that term is defined in section 3(m) of the Act. In making this determination, the hearing officer excluded the elected officials, police officers, firefighters, attorney, zoning administrator, community center director, and fire and police chiefs, in that it was uncontradicted that they were excluded from the definition of "public employee." The hearing officer also excluded all 27 part-time employees in the street, sewer, and parks departments, finding that they were short-term employees.

In this regard, section 3(m) of the Act provides as follows:

"3. Definitions: As used in this Act, unless the context otherwise requires:

\* \* \*

(m) 'Public employee' or 'employee', for the purposes of this Act, means any individual employed by a public employer, including interns and residents at public hospitals, but excluding all of the following: elected officials; executive heads of a department; members of boards or commissions; employees of any agency, board or commission created by this statute; non-State peace officers; all peace officers in the State Department of Law Enforcement; non-State firefighters and paramedics employed by fire departments and fire protection districts; employees appointed to State positions of a temporary or emergency nature; all employees of school districts and higher education institutions; managerial employees; short-term employees; confidential employees; independent contractors; and supervisors except as provided in this Act." Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1603(m).

Section 20(b) of the Act specifically excludes from its jurisdiction "units of local government employing less than 25 employees." (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1620(b).) Thus, the question with which the hearing officer was faced was whether the definition of "employee" in section 3(m) was the definition that should be applied to the word "employees" in section 20(b) or whether, as argued by the union, those individuals employed by the city in any capacity should be counted under section 20(b) for purposes of the jurisdictional count of 25 employees. The hearing officer accepted, and recommended that the Board accept, the union's argument, finding that while the city employed fewer than 25 public employees as defined in section 3(m) of the Act, the city was subject to the Board's jurisdiction in that it employed more than 25 "individual" employees.

The city thereafter filed timely exceptions to the hearing officer's recommended decision, and *amici curiae* briefs were filed by the Illinois Municipal League and the Du Page Mayors and Managers Conference, Inc., the Illinois Public Employer Labor Relations Association, and the Chicago Federation of Labor and the Illinois State Federation of Labor-Congress of Industrial Organizations.

On April 5, 1985, the Illinois State Labor Relations Board accepted the findings of fact contained in the hearing officer's recommended decision, but rejected the conclusions of law and dismissed the union's representation petition for lack of jurisdiction. The Board held that insofar as the city employed fewer than 25 public employees, section 20(b) of the Act specifically excluded the city from the Board's jurisdiction. The union thereafter filed its timely petition for review on May 8, 1985.

We note initially that the function of a court in reviewing administrative decisions is well settled in Illinois. Although we are not formally bound by administrative decisions interpreting the legal effect of statutory language, we will give the administrative agency's conclusion great weight in arriving at our own statutory construction. (*Whitley v. Board of Review* (1983), 116 Ill. App. 3d 476, 478, 451 N.E.2d 942, 944.) We also note that the standard of review in a proceeding brought pursuant to the Administrative Review Law is defined by that law. Section 3—110 (Ill. Rev. Stat. 1983, ch. 110, par. 3—110) provides in pertinent part:

> "The hearing and determination shall extend to all questions of law and of fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct."

With these principles in mind, the Board asserts that its interpretation of section 20(b) of the Act, when read in conjunction with section 3(m) of the Act, is reasonable, is in accordance with the legislative intent as indicated by the language of the Act, and is, therefore, correct and should be adopted by this court.

Section 20(b) of the Act specifically excludes from the Act's jurisdiction "units of local government employing less than 25 employees." The question which faced the hearing officer and the State Labor Relations Board, and which we now face, is whether the definition of "employees" in section 3(m), with all its various inclusions and exclusions, is the definition that should be applied to the word "employees"

in section 20(b) of the Act or whether, as argued by the union, some other usage of the word "employee" should apply for purposes of the jurisdictional count. The Board and the city contend that the employees referred to in section 20(b) of the Act are those employees defined by section 3(m) of the Act and not all employees in a generic sense as argued by the union.

It is well settled that statutory language must be given its plain, ordinary meaning and, in enforcing statutory provisions, courts cannot legislate, but must interpret the law as announced by the legislature. (*Chicago-Midwest Meat Association v. City of Evanston* (1981), 96 Ill. App. 3d 966, 969, 422 N.E.2d 205, 207.) It is also well settled that the legislature has the power to articulate reasonable definitions of any terms within its enactment and that such definitions for the purposes of its acts will be sustained to the exclusion of hypothetical indulgences. (*Mack v. Seaman* (1983), 113 Ill. App. 3d 151, 154, 446 N.E.2d 1217, 1219.) If the legislative intent can be ascertained from the language of the statute, the language prevails and will be given effect; the court may not declare that the legislature did not mean what the plain language of the statute imports. (*In re Application of People ex rel. Walgenbach* (1983), 117 Ill. App. 3d 14, 16, 452 N.E.2d 760, 762.) The intent of the legislature should be sought principally from the language used in the statute which affords the best method of its exposition. (*Brunke v. Board of Fire & Police Commissioners* (1981), 99 Ill. App. 3d 25, 28, 425 N.E.2d 15, 18.) Stated otherwise, the specific words of the statute are the best indicators of the legislative intent behind the enactment. (*Mack v. Seaman* (1983), 113 Ill. App. 3d 151, 155, 446 N.E.2d 1217, 1220.) No rule of construction authorizes a court to decide that the legislature did not mean what the plain statutory language imports. *Hill v. Butler* (1982), 107 Ill. App. 3d 721, 727, 437 N.E.2d 1307, 1312.

Although the entire Act could have been drafted with more clarity and internal consistency with regard to the issue before us, we find that the plain language of the Act, along with settled principles of statutory construction, require that the specific definition of "employee" in section 3(m) of the Act must be the definition of "employee" used in the jurisdictional provisions of section 20(b) of the Act and the Board's interpretation in this regard was correct.

Section 3(m) of the Act provides that "[a]s used in this Act, unless the context otherwise requires *** [the term] 'public employee' or 'employee,' for the purposes of this Act, means any individual employed by a public employer." It is noteworthy that the Act specifically excludes from the definition of "employee" a variety of job clas-

sifications, including "supervisors except as provided in this Act." (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1603(m).) In section 3(r)(2) of the Act, the statute expands on that proviso and notes that if an employer chooses to recognize such a unit, supervisory employees may also form a bargaining unit and bargain under the terms of the Act (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1603(4)(2)).

■■ As a general rule of statutory construction, the statutory definition of words to be used elsewhere in the same statute furnishes official and authoritative evidence of legislative intent and meaning and should be given controlling effect. (1A A. Sutherland, Statutory Construction sec. 27.02 (4th ed. 1972 & Supp. 1983).) This rule is followed in Illinois. (See *Mette v. Feltgen* (1894), 148 Ill. 357, 36 N.E. 81.) Thus, the term "employee" as used in section 20(b) of the Act must be construed in accordance with the specific definition given that term in section 3(m) of the Act. Consequently, in determining the number of "employees" under section 20(b) of the Act, managers, executive heads, confidentials, supervisors, short-term employees, and the other employees expressly listed must be excluded from such a count because they are specifically excluded from the definition of "employee" contained in section 3(m) of the Act. Where the definitional clause is clear, it should ordinarily control the meaning of words used in the remainder of the Act because of its authoritative nature. *Mette v. Feltgen* (1894), 148 Ill. 357, 36 N.E. 81; *Tak Cheong Hau v. Moyer* (N.D. Ill. 1983), 576 F. Supp. 844, 847.

■■ When an act defines the terms to be used in it, those terms must be construed according to the definitions given them in the act. (*Krebs v. Thompson* (1944), 387 Ill. 471, 478, 56 N.E.2d 761, 764.) Section 3(m) of the Act defines, "for purposes of this Act," the words "public employee" or "employee." By this subsection, the legislature is directing that the definition following both words be applied wherever either of the words is utilized in the entire Act, unless the context clearly requires otherwise. We find nothing in the context of section 20(b) of the Act that requires any other definition of the term "employee" than that found in section 3(m) of the Act. To apply another definition than that found in section 3(m) of the Act would result in this court's legislating the provisions of the Act. The State Labor Relations Board recognized this by noting that the Board had no power to legislate and must take the law as it is. (*Doran v. Department of Labor* (1983), 116 Ill. App. 3d 471, 475, 452 N.E.2d 118, 121.) As noted by the Board, if it had adopted a "generic sense" definition of employees as asserted by the union, it would have been engaging in hypothetical indulgences, and such indulgences cannot over-

ride clear legislative language. (See *Mack v. Seaman* (1983), 113 Ill. App. 3d 151, 154, 446 N.E.2d 1217, 1219; *Chicago-Midwest Meat Association v. City of Evanston* (1981), 96 Ill. App. 3d 966, 969, 422 N.E.2d 205, 208.) We find that the Board cannot involve itself in deciding who will or who will not be included as "employees" for the purposes of section 20(b) of the Act by ignoring the definition of "employees" which is found in the Act itself. We cannot ignore the fact that the legislature has set forth a definition for the use of the word "employee" in section 3(m) of the Act and that section 20(b) of the Act uses the term without modifying it. Rather than leave any doubt as to how the term "employee" should be defined throughout the statute, the legislature specifically stated in section 3(m) that " 'employee,' for the purposes of this Act means ***." Thus, the legislature has made it clear that when the word "employee" or "public employee" is used in the Act, it means those individuals included in section 3(m) and specifically excludes those classifications not included in section 3(m). If the legislature had intended that all employees be counted for purposes of determining section 20(b)'s jurisdictional limits, it could and would have expressly so provided. Finally, we note the general principle that requires that statutes which impose new liabilities or change the common law must be strictly construed. (*Cedar Park Cemetery Association, Inc. v. Cooper* (1951), 408 Ill. 79, 83, 96 N.E.2d 482, 484.) Inasmuch as the Illinois Public Labor Relations Act changes common law and imposes new liabilities upon public employers, we must interpret the Act narrowly.

We accordingly find that a reading of the plain language of the Act, along with settled principles of statutory construction, lead us to the conclusion that the Illinois State Labor Relations Board's interpretation of the word "employees" in section 20(b) of the Act is correct and that the Board therefore did not err in dismissing the union's representation petition for lack of jurisdiction, assuming the Board did not err in its determination that the city did not employ 25 "public employees."

The union, in its main brief, argued that the Board erred in ruling that the city did not employ 25 "public employees" as that term is defined in section 3(m) of the Act. The basis of the Union's contention on appeal is that the findings of fact of the hearing officer, which were adopted by the Board, required a finding that 12 city employees did not meet the test or definition of a short-term employee under the Act and, therefore, were not excluded from the definition of "public employee." Both the Board and the city in their briefs assert that this issue involving "part-time" employees was not raised below and

therefore is not properly before this court. The city and the Board urge that the union should not be allowed to change its argument and present this court with an argument not passed upon by the State Labor Relations Board.

We direct our attention first to the standard of review in a proceeding brought pursuant to the Administrative Review Law which is set forth in section 3—110 (Ill. Rev. Stat. 1983, ch. 110, par. 3—110), which provides:

"Scope of Review. Every action to review any final administrative decision shall be heard and determined by the court with all convenient speed. The hearing and determination shall extend to all questions of law and of fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct."

We find that the issue regarding part-time employees was addressed below and is properly before us on administrative review. We further find that the union is not urging a different theory on review than argued below but, rather, is specifically objecting to the application of the definition of short-term employee to specific part-time employees based upon the facts as found by the hearing officer.

Substantial testimony relevant to this issue was elicited by the parties. The city addressed the issue in its exceptions to the hearing officer's recommended decision and it was addressed and ruled upon by the hearing officer and the Board. Although the union did not file exceptions to the hearing officer's recommended decision (having prevailed in that the hearing officer directed an election, which was the ultimate intent of the Union), it did request leave to respond to the exceptions filed by the city; however, the Board denied that request. The Board's decision noted that an *amicus curiae* brief was filed by the Chicago Federation of Labor-Congress of Industrial Organizations, and this brief in part did assert that it did not concur in the hearing officer's recommendation that seasonal employees should not be included in the total employment count for determining jurisdiction. We find that based upon the questions posed by counsel for the union at the hearing, as well as the hearing officer and the city's counsel, a complete factual record was established at the hearing, and no new or additional evidence was needed to address this issue for purposes of the appeal.

■ We now turn to the merits of the union's argument. The union does not challenge the factual findings and determinations made by the hearing officer, which were adopted by the Board, but rather asserts that the hearing officer and the Board erred as a matter of law in classifying certain seasonal employees as "short-term employees," consequently excluding them from the total jurisdictional count of 25 "public employees" required for the Board to assume jurisdiction under section 20(b) of the Act.

The hearing officer found that the city employed a maximum of 44 public employees. These 44 possible employees included the 27 part-time employees in the street, sewer, and parks department; therefore, if all 27 part-time employees were excluded as short-term employees as defined in section 3(p) of the Act, the city would employ fewer than 25 public employees and accordingly the Board would be without jurisdiction.

A short-term employee is defined in section 3(p) of the Act as:

"an employee who is employed for less than two consecutive calendar quarters during a calendar year and who does not have a reasonable assurance that he or she will be rehired by the same employer for the same service in a subsequent calendar year." (Ill. Rev. Stat. 1984 Supp., ch. 48, par. 1603(p).)

Since the definition is stated in the conjunctive, in order to exclude a part-time employee from the definition of "public employee" on the ground that they constitute a short-term employee, both elements must be present. Thus, in order to be excluded, the Board must find that the employee was employed for less than the prescribed period and did not have a reasonable assurance of being rehired. If either element is not met, the employee, although part-time, cannot be excluded as a short-term employee and must be counted for purposes of ascertaining the jurisdiction of the Board.

As we have noted, the Board adopted the findings of fact of the hearing officer *in toto*, and accordingly we will focus upon the recommended decision of the hearing officer which contained a detailed analysis of the facts of the case. The hearing officer found that only 24 of the 27 part-time employees worked less than two consecutive calendar quarters. Thus, three of the 27 did not meet the first element of the definition of a short-term employee and must be considered as public employees for jurisdictional purposes. Of the remaining 24 part-time employees, the hearing officer found that nine worked as lifeguards at the municipal pool, a job requiring special certification. Because the lifeguard position required a special certification, the hearing officer found that those individuals who previously worked for

the city as lifeguards were likely to be hired in subsequent summers if they reapplied. The hearing officer found that all nine lifeguards employed in the 1984 summer season, at least eight of whom had been previously employed in the 1983 season, had a reasonable assurance that they would be rehired by the city in subsequent years. These findings of fact, which were adopted by the Board, are entitled to great weight and are *prima facie* true and correct. (Ill. Rev. Stat. 1983, ch. 110, par. 3—110.) Based upon that specific finding of fact, the nine lifeguards failed to meet the second criterion of a short-term employee and thus cannot be excluded as exempt for jurisdictional purposes.

We accordingly find that the total of 12 employees did not meet the test or definition of "short-term employee" and were therefore not excluded from the definition of "public employee." Excluding from the maximum 44 public employees the remaining 15 part-time employees who did meet the definition of short-term employee results in a finding of 29 public employees. However, the Board's holding that the three part-time employees who worked more than two consecutive calendar quarters and the nine part-time individuals employed as lifeguards who had a reasonable assurance of being rehired were short-term employees is contrary to the explicit provisions of the Act. We find that the Board erred as a matter of law in its application of the definition of "short-term employee" as set forth in section 3(p) of the Act to those individuals. Accordingly, we find the city was subject to the jurisdiction of the Act in that it employed at least 25 public employees.

As an aside, we note that section 3(m) of the Act (now section 3(n)) has been amended, effective January 1, 1986, by Public Act 84-1104. The amendment to the definition of "public employees" deleted "non-State peace officers; all peace officers in the State Department of State Police; non-State firefighters and paramedics employed by fire departments and fire protection districts." (Ill. Rev. Stat. 1985, ch. 48, par. 1603(n), formerly Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1603(m).) This amendatory act also amended section 20(b) of the Act so as to make the Illinois Public Labor Relations Act inapplicable to units of local government employing less than "35" (as opposed to "25" under prior section) employees. (Ill. Rev. Stat. 1985, ch. 48, par. 1620(b), formerly Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1620(b).) We note that the application of these amended sections to the facts in the case at bar would subject the city to the jurisdiction of the Illinois Public Labor Relations Act. Since we have already found the city to be subject to the Act, we will not address the applicability or inappli-

1064

cability of these amendments to the facts in the instant case.

For the reasons stated above, we reverse the decision of the Illinois State Labor Relations Board published April 5, 1985, and remand this cause with directions to conduct a representation election. We instruct the Board to find that the city of Robinson is subject to the jurisdiction of the Illinois Public Labor Relations Act pursuant to section 20(b) of the Act in that it employs at least 25 public employees as that term is defined in section 3(m) of the Act.

Reversed and remanded.

KARNS, P.J., and JONES, J., concur.