THE CITY OF FREEPORT, Petitioner, v. ILLINOIS STATE LABOR RE-LATIONS BOARD et al., Respondents.

Second District No. 2—87—0399

Opinion filed May 6, 1988.

Richard B. Lapp, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (John T. Weise, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield, Jacalyn J. Zimmerman, of Illinois State Labor Relations Board, and Jacqueline Kinnaman, of American Federation of State, County and Municipal Employees, both of Chicago (Imelda R. Terrazino, Assistant Attorney General, of Chicago, of counsel), for respondents Illinois State Labor Relations Board, William M. Brogan, Robert J. Hilliard, and Claire A. Manning.

Cornfield & Feldman, of Chicago (J. Dale Berry, of counsel), for respondent American Federation of State, County and Municipal Employees.

Thomas W. Kelty, of Pfeifer & Kelty, P.C., and Gregory A. Crouse, both of Springfield, for *amicus curiae*, Illinois Municipal League.

James A. Murphy, of Peoria, and Giacomo A. Pecoraro, of Springfield Police Department, of Springfield, for *amicus curiae*, Illinois Association of Chiefs of Police, Inc.

JUSTICE NASH delivered the opinion of the court:

The City of Freeport appeals from an order of the Illinois State Labor Relations Board (Board) determining that Freeport had engaged in an unfair labor practice for refusing to bargain with the American Federation of State, County and Municipal Employees (AFSCME), which had been certified by the Board as the exclusive bargaining representative of certain employees of the Freeport police department. The Illinois Association of Chiefs of Police, Inc., and Illinois Municipal League have filed a brief *amici curiae* opposing the decision of the Board, and AFSCME filed a separate brief in support of it.

At issue in this appeal is a decision of the Board which found that the lieutenants and sergeants of the Freeport police department were not supervisors, as defined in the Illinois Public Labor Relations Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 1603(r)), and they were thus included within an employee bargaining unit composed of all sworn officers of the department except the chief and assistant chief of police.

On January 8, 1986, AFSCME filed a representation petition with the Board pursuant to section 9 of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1609) in which it sought certification as the exclusive repre-

sentative for a bargaining unit composed of the sworn officers of the police department except the chief and assistant chief of police, and including therein all lieutenants, sergeants, corporals and patrolmen. The matter was referred by the Board to a hearing officer who rejected Freeport's arguments that three lieutenants who served as full-time shift commanders, one lieutenant who commanded the detective bureau and three sergeants who served as part-time shift commanders were supervisors and should not be included within the bargaining unit. The hearing officer found that an appropriate employee unit for purposes of collective bargaining consisted of all sworn peace officers below the rank of assistant chief, including the lieutenants, sergeants, corporals and patrolmen. The Board accepted the recommendation of the hearing officer, adopted it as the Board's decision, and directed that an election be held by these ranks of employees to determine whether they wished to be represented by AFSCME or have no representation. The election was conducted, after which the Board certified AFSCME as the exclusive representative of the employees it had designated as a bargaining unit. Freeport declined to bargain with AFSCME in order to seek a court review of the Board's unit determination; it was found to have thus engaged in an unfair labor practice and ordered to desist, and this appeal followed.

Judicial review of a final order of the Board is taken directly to the appellate court (Ill. Rev. Stat. 1985, ch. 48, par. 1611(a)) and will be considered in accordance with the provisions of the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*). The findings and conclusions of an administrative agency on questions of fact will be considered to be *prima facie* true and correct, except where they are against the manifest weight of the evidence and it is clearly evident the agency should have reached the opposite conclusion. (*City of Peru v. Illinois State Labor Relations Board* (1988), 167 Ill. App. 3d 284, 286; *City of Wood Dale v. Illinois State Labor Relations Board* (1988), 165 Ill. App. 3d 640, 643; *Rockford Township Highway Department v. Illinois State Labor Relations Board* (1987), 153 Ill. App. 3d 863, 872, 506 N.E.2d 390.) Courts will accord deference to an interpretation of a statute by the agency charged with its administration, but it is not binding and will be rejected when erroneous. *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353.

In our analysis of the evidence presented to the Board we have considered the recent case of *City of Peru v. Illinois State Labor Relations Board*, in which the court concluded, on very similar facts,

that the Board erred in finding that the lieutenants and sergeants of the Peru police department were not supervisory employees and included them in a bargaining unit with their subordinates. See also *Village of Oak Park v. Illinois State Labor Relations Board* (1988), 168 Ill. App. 3d 7 (refusal to bargain with the representative of a bargaining unit composed of the lieutenants and sergeants of the Oak Park police department was an unfair labor practice).

■ As relevant to this appeal, section 3(n) of the Illinois Public Labor Relations Act provides:

> " 'Public employee' or 'employee', for the purposes of this Act, means any individual employed by a public employer, *** but excluding all *** supervisors except as provided in this Act." Ill. Rev. Stat. 1985, ch. 48, par. 1603(n).

Section 3(r) of the Act defines who is a supervisor, as pertinent to this case, as follows:

> " 'Supervisor' is an employee whose principal work is substantially different from that of his subordinates and who has authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, or to adjust their grievances, or to effectively recommend such action, if the exercise of such authority is not of a merely routine or clerical nature, but requires the consistent use of independent judgment. *Except with respect to police employment*, the term 'supervisor' includes only those individuals who devote a preponderance of their employment time to exercising such authority State supervisors notwithstanding. In addition, in determining supervisory status in police employment, rank shall not be determinative. The Board shall consider, as evidence of bargaining unit inclusion or exclusion, the common law enforcement policies and relationships between police officer ranks and certification under applicable civil service law, ordinances, personnel codes or Division 2.1 of Article 10 of the Illinois Municipal Code, as amended from time to time, but these factors shall not be the sole or predominant factors considered by the Board in determining police supervisory status." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 48, par. 1603(r).

The facts set forth in the hearing officer's recommended opinion and direction of election are not substantially disputed. The City of Freeport has a population of approximately 26,000 within its nine-square mile corporate limits. Its police department employs 42 sworn officers: a chief, assistant chief, 4 lieutenants, 5 sergeants, 7 corpo-

rals, and 24 patrolmen. The department also employs nonsworn personnel consisting of five radio-dispatchers, two record clerks, and one meter maid and is assisted by a civilian auxiliary police unit of 18 to 20 volunteers. The department operates as a paramilitary organization in which all superior ranks have authority over those of a subordinate rank and is divided into three divisions: patrol, detective, and traffic.

The chief of police is responsible for the administration of the department and reports to the mayor of the city. He has little daily contact with police officers and does not hold supervisory or management meetings. The chief's activities primarily concern the writing and reviewing of reports and attending meetings. He monitors activities of the department by listening to the police radio and, when warranted, discusses departmental matters with a commanding officer. The chief is primarily responsible for formulating department policies and procedures and issues a police department manual which includes general and special orders relating to the operation of the department. The police department is in operation for 24 hours every day in three shifts, while the chief and assistant chief work from 9 a.m. to 5 p.m. Mondays through Fridays.

The assistant chief of police assists in the day-to-day administration of the department and his primary duties are clerical in nature; he has little involvement in supervision of the police officers.

The patrol division of the department consists of three lieutenants, three sergeants, three corporals, and 21 patrolmen. A patrol lieutenant's primary responsibility is to act as shift commander, and he is accountable to the chief for all activities taking place on his shift. The lieutenants monitor their shift activities by radio when not on duty, and the sergeants act as shift commanders in the lieutenant's absence. Corporals also fill in as shift commanders about four times each month. When not serving as shift commander, the sergeants and corporals are assigned to beats and patrol in marked squad cars.

The shift commander's duties and responsibilities include (1) taking roll call at each shift and receiving investigation reports of police officers; (2) assigning the officers to beats, squad cars and partners; (3) ordering off-duty officers to work when there is a manpower shortage; (4) issuing oral and written reprimands to subordinates and to recommend disciplinary suspensions; (5) to take command of an investigation and direct officers in the field; (6) when patrolling, they act primarily as backup to other officers on a city-wide basis, and answer substantially fewer calls than do the patrolmen. Some of the duties of the shift commanders are performed pursuant to regulations

set forth in the police manual issued by the chief of police in the nature of standing orders. They are required to spend five hours on patrol during a shift, and usually do so for about 6½ hours. Although not required to do so, shift commanders will sometimes issue tickets for traffic violations.

In addition to their duties as shift commanders, the lieutenants have authority to approve overtime compensation for court appearances and end-of-shift report preparation by the patrolmen. They determine their own beat system, approve vacation requests after May 15 each year and for personal holiday leaves. Both lieutenants and sergeants in the patrol division evaluate their subordinates through a formal written procedure, and under the terms of the police manual regulations, are responsible for discipline. Lieutenants and sergeants are authorized to trade days off without other approval. The lieutenants serve as commanders of the patrol division during an eight-hour shift which typically is also comprised of one sergeant, one corporal and seven patrolmen. In the absence of the lieutenant from a shift, the sergeant is shift commander and acts in that capacity 8 to 10 days each month, during the remainder of which he performs regular patrol duties.

The detective bureau is comprised of a lieutenant, a sergeant, four corporals and a patrolman. The lieutenant is authorized to exercise the same authority over those under his command in the bureau as is a shift commander in the patrol division. The duties of the subordinate detectives involve investigations in the field, interviewing witnesses and making written reports. The lieutenant spends most of his time at headquarters reviewing the work performed by the detectives, conferring with the State's Attorney, directing and coordinating the work of the detectives and advising them when further investigation is required.

The patrolmen and corporals spend most of their work time patrolling the city in marked police cars. They are assigned to zones or beats and observe conditions until a call is received from a radio dispatcher assigning them to a police matter, such as burglaries, domestic problems, tavern brawls, barking dogs and traffic regulation. In addition, the patrolmen prepare and file reports of their investigations, including accidents, and attend court relating to those matters. The departmental regulations charge the patrol officers with the responsibility to protect life and property, enforce the criminal and traffic laws, prevent crime and enforce the public peace and apprehend law violators. The regulations provide that the patrolmen work under the supervision of all superior officers.

The hearing officer and Board determined that the four lieutenants who are full-time commanders of the patrol division and the detective bureau, and the three sergeants who are part-time shift commanders of the patrol division, were not supervisors as their work was not substantially different from that of their subordinates. The hearing officer's conclusion, which the Board adopted, was that these officers spent a majority of their time performing patrol duties similar to that of their subordinates and exercised little supervisory authority. It was also determined that the shift commanders did not consistently use independent judgment since their authority was exercised routinely and infrequently. While it was recognized that the lieutenant who commanded the detective bureau performed work substantially different from that of his subordinates, the Board found he did not exercise consistent use of independent judgment. Concluding that the "nature and essence" of their functions was not different from that of their subordinates, the Board determined that the lieutenants and sergeants should be included in the same collective bargaining unit as the other sworn officers of the department, except the chief and assistant chief. In its decision, a majority of the Board recognized that its rulings "place [the employer] in the untenable position of being declared virtually without supervisors" but felt constrained by the language of the statute to find that the employees are not supervisors, despite their performance of supervisory functions.

■ The parties agree that in order to be considered as a supervisor as defined by section 3(r) of the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, par. 1603(r)) in the context of police employment, an employee must (1) perform principal work which is substantially different from that of his subordinates; (2) have authority, in the interest of the employer, to exercise one or more of the 11 functions of authority noted in section 3(r), or effectively recommend such action; and (3) that the exercise of supervisory authority may not be routine, but must involve the consistent use of independent judgment.

There is no substantial dispute in this case as to the second prong of the supervisory standard. Although the lieutenants and sergeants in question do not have authority to hire, lay off, recall, promote or discharge the subordinate employees, a power vested in the Freeport Board of Fire and Police Commissioners (Ill. Rev. Stat. 1985, ch. 24, par. 10—2.1—1 et seq.), these commanders do possess, at least to some degree, the authority to transfer, suspend, direct, reward, discipline and adjust grievances, or to effectively recommend such action. Construction and application of the principal work and independent

judgment factors of the statute are disputed by the parties.

The essential contention of the City of Freeport relates to the application of a "nature and essence" test used by the Board as a standard to determine whether the principal work of a commander is substantially different from that of his subordinates, and whether that work requires the consistent use of independent judgment to perform. Freeport argues that the board overemphasized the time spent by the lieutenants and sergeants on patrol, the principal function of the patrolmen, and the number of occasions on which they actually exercised their independent judgment and authority in performing their duties. The result, as asserted by Freeport, is an apparent requirement by the Board that to be considered as a supervisor of the police department an employee must actually apply a preponderance of his work time to the exercise of supervisory functions, contrary to the exclusion of that factor in section 3(r) of the Act. See *Village of Alsip*, 2 Pub. Employee Rep. (Ill.) par. 2038, case No. S—RC—303 (Illinois State Labor Relations Board Sept. 5, 1986) (Member Manning dissenting).

The lieutenants and sergeants in issue represent the only link between the rank-and-file of the department and the chief of police. These are the officers who actually oversee the continuous operation of the police department and are the command employees who direct, discipline and evaluate the other police employees. It is apparent from the evidence that these full-time and part-time shift commanders, and the lieutenant who directs the operation of the detective bureau, have substantial supervisory power and duties which set their work apart from the other officers. To conclude, as did the Board, that the time spent patrolling as back-up to their subordinates causes the shift commanders to become a part of rank-and-file fails to give due consideration to how a police department must function. The principal work of these commanders is to put in place in the community a protective police force, control and direct it as circumstances may require, and be themselves ready to exercise the command authority over the subordinates to carry out the responsibilities of a police department.

■■ ■ We find that statistical consideration by the Board of the number of times a supervisory function was in fact exercised by the lieutenants and sergeants was misapplied by it as a predominate factor in determining whether the principal work requirement was met. Section 3(r) of the Act does not require that numerical approach to determine whether an employee is a supervisor, and logic may suggest it is an improper consideration. How often a given supervisory authority may be exercised by a commander would depend upon the

personal leadership direction taken by him and the training and experience of his subordinates; also affecting such numbers would be the crime rate and the size of the police department and the community it serves. As Member Manning noted in her well-reasoned dissent in *Village of Alsip*:

> "The nature and essence test, however, requires a qualitative, rather than quantitative, analysis. The *existence* of the supervisory authority, and the *ability* to exercise it to impact a subordinate's employment *at any time*, changes the nature of the relationship between the sergeants and the patrol officers to an extent which renders the nature of their function very different despite their facial similarity." (Emphasis in original.) (*Village of Alsip*, 2 Pub. Employee Rep. (Ill.) par. 2038, at VIII—262.)

The Board failed to distinguish between the supervisory authority, which these commanders had been given, and its use by them. Section 3(r) of the Act defines a supervisor as "one who has authority," not as one who regularly exercised authority.

The same question arises when considering the Board's finding that the commanders in question did not meet the consistent use of independent judgment prong of section 3(r). The Board concluded that the commanders seldom, and then only routinely, were required to use independent judgment in the performance of their functions. However, how often independent judgment by a commander will be exercised is more a function of opportunity and necessity than it is an indicia of his supervisory authority. If the crime rate is low and subordinates are well trained and disciplined, the number of occasions upon which the commander must act will be less. In our view, the relevant consideration is whether the commander has authority to exercise independent judgment and is expected to do so when necessary to direct the activities of his subordinates.

■ As we conclude that the decision of the Board is contrary to the manifest weight of the evidence, its order finding the City of Freeport to be guilty of an unfair labor practice will be reversed.

Reversed.

DUNN and REINHARD, JJ., concur.