AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, COUNCIL 31, AFL-CIO, Petitioner, v. THE ILLINOIS LOCAL LABOR RELATIONS BOARD *et al.*, Respondents.—THE COUNTY OF COOK *et al.*, Petitioners and Cross-Respondents, v. THE ILLINOIS LOCAL LABOR RELATIONS BOARD, Respondent (American Federation of State, County, and Municipal Employees, Council 31, AFL-CIO, Respondent and Cross-Petitioner).

First District (2nd Division)   Nos. 1—89—1392, 1—89—1981, 1—89—2017 cons.

Opinion filed October 22, 1991.

Neil F. Hartigan, Attorney General, of Springfield (Karen Michels Caille, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Local Labor Relations Board.

J. Dale Berry and Mark S. Stein, both of Cornfield & Feldman, of Chicago, for American Federation of State, County & Municipal Employees.

Cecil A. Partee, State's Attorney, of Chicago (Thomas H. Riley, Jr., Iris E. Sholder, and Joan S. Cherry, Assistant State's Attorneys, of counsel), for County of Cook/Sheriff of Cook County.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Council 31 of the American Federation of State, County, and Municipal Employees (AFSCME) seeks review of the Illinois Local Labor Relations Board's (Board's) partial dismissal of its representation petition in which it requested certification as the bargaining agent of a unit consisting of the sergeants, lieutenants and captains employed by the Cook County Department of Corrections (Department) and the sheriff of Cook County (Joint Employers). AFSCME claims that the Board erred in holding that the lieutenants and captains were "supervisors" under section 3(r) of the Illinois Public Labor Relations Act

(Act) (Ill. Rev. Stat. 1987, ch. 48, par. 1603(r)), and were thereby wrongfully denied inclusion in a bargaining unit with the sergeants. AFSCME asks that the Board's decision be reversed and that this cause be remanded with directions to the Board to hold an election among all three ranks on the issue of AFSCME's representation; in the alternative, it asks that the cause be remanded for the purpose of making a finding as to whether the lieutenants and captains devote a "preponderance of time" to exercising supervisory authority.

The Joint Employers petition for review of the Board's certification of AFSCME as the sergeants' bargaining representative, claiming that the Board erred in holding that the sergeants were not supervisors, and asking that the Board's certification be reversed.

Following a hearing on AFSCME's representation petition, a hearing officer made numerous findings of fact and recommended to the Board that it find that neither the sergeants, lieutenants nor captains were supervisors, and that all three ranks be afforded an opportunity to vote on whether they wished to be represented in a bargaining unit by AFSCME. In reviewing these recommendations, the Board summarized the role and structure of the Department as follows:

> "The *** Department *** is a very large organization which operates the Cook County Jail. The jail *** houses in excess of 5200 inmates, mostly criminal defendants held for trial in the Circuit Court of Cook County. The [Department] is organized in several divisions and sections, and employs approximately 1776 correctional officers.
>
> The correctional officers have the initial responsibility for securing the jail complex and guarding the individuals incarcerated there. *** Above the correctional officers in the [Department's] paramilitary chain of command are the sergeants, then the lieutenants, and then the captains. There are 112 sergeants, 44 lieutenants, and 16 captains. Typically, each higher rank is responsible for a larger area of the institution.
>
> The captains report to divisional Superintendents, who report to a Director of Security, who reports to the [Department's] Executive Director. The Executive Director is appointed by and reports to the Sheriff, an elected County official."

While adopting the hearing officer's findings of fact and his recommendation that the sergeants be found not to be supervisors, the Board rejected his recommended finding that the lieutenants and captains were not supervisors. Accordingly, on April 26, 1989, the Board dismissed AFSCME's representation petition in part, granted it in

part and directed that an election be conducted only among the sergeants. The sergeants voted in favor of certification, and the Board, on June 28, 1989, certified AFSCME as their bargaining representative.

■ We take up first the question of whether we have jurisdiction to hear AFSCME's petition for review of the Board's April 26, 1989, partial dismissal of its representation petition. Section 9(i) of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 1609(i)) states that "An order of the Board dismissing a representation petition *** is a final order. Any person aggrieved by any such order *** may apply for and obtain judicial review in accordance with the provisions of the Administrative Review Law [(Ill. Rev. Stat. 1987, ch. 110, par. 3—101 et seq.)] *** directly in the Appellate Court ***." The issue, then, is whether the Board's partial dismissal of AFSCME's representation petition was "dismiss[al of] a representation petition." We hold that it was not.

Prior to the effective date of section 9(i) of the Act, the Board's dismissal of a representation petition was judicially reviewable pursuant to section 11(e) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1611(e)) "in accordance with the provisions of the Administrative Review Law" (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 et seq.), as a "final order *** denying in whole or in part the relief sought"; and a "final order," for the purposes of the Act, was defined to be the same as an "[a]dministrative decision" under section 3—101 of the Administrative Review Law, because it "affect[ed] the legal rights, duties or privileges of parties and *** terminate[d] the proceedings before the administrative agency." Laborer's International Union of North America, Local 1280 v. Illinois State Labor Relations Board (1987), 154 Ill. App. 3d 1045, 1052-54.

■ A partial dismissal, however, does not "terminate[ ] the proceedings before the administrative agency." (Ill. Rev. Stat. 1987, ch. 110, par. 3—101.) Section 9(i), while listing several other types of orders as final and which are therefore judicially reviewable under the Administrative Review Law, is not inconsistent with the definition given by the Laborer's International Union court. Moreover, neither the United States Supreme Court nor most State courts that have construed similar statutory schemes have considered as final those orders which merely determine the composition of a unit in a representation/certification proceeding and direct that an election be held, regardless of whether the challenge comes from the administrative agency or the prospective representative. We therefore hold that we have no jurisdiction over AFSCME's petition from the Board's April 26, 1989, order. See Boire v. Greyhound Corp. (1964), 376 U.S. 473,

476-77, 11 L. Ed. 2d 849, 852-53, 84 S. Ct. 894, 896-97; *Five-County Joint Juvenile Detention Center v. State Employment Relations Board* (1991), 57 Ohio St. 3d 4, 565 N.E.2d 546; *Indiana Education Employment Relations Board v. Benton Community School Corp.* (1977), 266 Ind. 491, 505, 365 N.E.2d 752, 759; *Harrison v. Labor Relations Comm'n* (1973), 363 Mass. 548, 551, 296 N.E.2d 196, 198; *Division of State Lands Employees Association v. Division of State Lands* (1985), 72 Or. App. 559, 561-64, 696 P.2d 578, 578-80; *Renton Education Association v. Washington State Public Employment Relations Comm'n* (1979), 24 Wash. App. 476, 479, 603 P.2d 1271, 1272-73; *Lincoln County Memorial Hospital v. Missouri State Board of Mediation* (Mo. Ct. App. 1977), 549 S.W.2d 665, 669; *Panama City v. Florida Public Employees Relations Comm'n* (Fla. Dist. Ct. App. 1976), 333 So. 2d 470, 471; but see *Civil Service Employees Association, Inc. v. Helsby* (1969), 31 A.D.2d 325, 329-30, 297 N.Y.S.2d 813, 817-18, *aff'd* (1969), 24 N.Y.2d 993, 250 N.E.2d 230, 302 N.Y.S.2d 822.

■■ We next consider the Joint Employers' argument that AFSCME was not "aggrieved" by, and thus has no standing to challenge, the Board's June 28, 1989, certification of it as the representative of the sergeants, and its insistence that we have no jurisdiction over AFSCME's "cross-petition" from that order, filed in response to the Joint Employers' petition for review of the certification. We hold that AFSCME clearly has standing to petition from the Board's order of June 28, 1989, since it granted AFSCME only part of what it had petitioned for and was the "final order" from which it was entitled to seek judicial review under section 9(i) of the Act. However, because the issues raised in the "cross-petition" are the same as those raised in AFSCME's petition from the certification, we need not determine whether we have jurisdiction over the "cross-petition."

■■ Turning now to the merits of the case, we note that section 3(s)(1) of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 1603(s)(1)) states that "a bargaining unit determined by the Board shall not include both employees and supervisors, or supervisors only, except [under circumstances not here relevant]." Section 3(r) of the Act states:

> " 'Supervisor' is an employee whose principal work is substantially different from that of his subordinates and who has authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, or to adjust their grievances, or to effectively recommend such action, if the exercise of such authority is not of a merely routine or clerical nature, but requires the

consistent use of independent judgment. Except with respect to police employment, the term 'supervisor' includes only those individuals who devote a preponderance of their employment time to exercising such authority ***." Ill. Rev. Stat. 1987, ch. 48, par. 1603(r).

In reviewing the various contentions made by the parties in the case at bar, we are mindful that:

"Judicial review of the Board's decision is governed by the provisions of the Administrative Review Law. [Citation.] That statute specifies that *** the agency's findings and conclusions on questions of fact shall be held *prima facie* true and correct. (Ill. Rev. Stat. 1987, ch. 110, par. 3—110.) Where the findings of fact are against the manifest weight of the evidence and it is clearly evident that the Board should have reached the opposite conclusion, the reviewing court may reverse the agency's findings of fact. [Citation.] Where the question involved is one of law, such as the proper interpretation of a statute, the Board's finding is not binding on the court." *City of Freeport v. Illinois State Labor Relations Board* (1990), 135 Ill. 2d 499, 507.

In challenging the Board's determination that the sergeants were not supervisors, the Joint Employers first argue that because the Department is a "paramilitary organization," there is no need for sergeants to devote a preponderance of their employment time to exercising supervisory authority. In support, they cite *City of Freeport* (135 Ill. 2d at 512), which noted, citing section 3(r) of the Act, that "police employees may qualify as supervisors even if they do not devote a preponderance of their employment time exercising their supervisory authority." But the decision in *Freeport* had nothing to do with the Freeport police department's having a "paramilitary structure" (135 Ill. 2d at 508), and the Joint Employers claimed neither before the Board nor in their petition to this court that the sergeants are engaged in police employment. Accordingly, we hold that the Board did not err in applying the "preponderance of time" test to the sergeants.

The Joint Employers next contend that the Board, when determining that the sergeants were not supervisors, made the following errors: (1) that its finding that the sergeants have no authority to discipline, suspend, evaluate, reward, or direct subordinates, or to recommend the discipline, suspension or promotion of subordinates, was against the manifest weight of the evidence; (2) that it erroneously failed to determine whether the sergeants' exercise of these kinds of authority required the consistent use of independent judgment; and

(3) that its finding that the sergeants do not satisfy the "preponderance" test was against the manifest weight of the evidence.

■■ Preliminarily, we note that section 3(r) of the Act does not list "evaluate" among the types of authority which are supervisory in nature, and that such authority is relevant only to the extent that it bears on other statutory aspects of supervisory authority; we therefore need not consider any failure by the Board to recognize as supervisory any authority by the sergeants to "evaluate" subordinates. Next, an analysis of the Board's opinion determining that the sergeants were not supervisors leads easily to the conclusion that this issue can be effectively dealt with by examining the Joint Employers' third claim, namely, that the Board's finding that the sergeants do not satisfy the "preponderance" test was against the manifest weight of the evidence, for even if the Joint Employers' two other claims are sustainable, the sergeants' failure to satisfy this test would not change the result.

The Board found that sergeants sometimes serve "as 'shift commanders' with ultimate responsibility for the security of a major unit of the [jail]," a duty which the Board found to require the consistent use of independent judgment. The Board held further, respecting the other types of authority granted to the sergeants:

> "[E]ven if these activities by the sergeants ['direct[ing] *** rewarding, promoting and disciplining of subordinates'] constitute the exercise of 'supervisory' authority [that is, that they may be exercised in the 'interest of the employer *** [and their] exercise *** requires the consistent use of independent judgment'], it does not consume the 'preponderance' of their time."

The Joint Employers do not claim that the amount of time spent by the sergeants in occasionally serving as shift commanders and in "rewarding, promoting and disciplining *** subordinates" should have been found to constitute a preponderance of the sergeants' employment time; rather, they rely on the authority of sergeants to direct subordinates during the course of their daily work; this authority, they contend, allows the sergeants to qualify as supervisors when it is considered in conjunction with their remaining supervisory authority. The relevant questions, then, concern those claims made by the Joint Employers with regard to the Board's alleged errors concerning the sergeants' authority to direct their subordinates.

The hearing officer found that sergeants, when not serving as shift commanders, are

> "generally assigned to certain areas [of the jail] *** and are charged with maintaining the security of those areas ***.

[They] schedule recreation periods for some of the inmates housed in the cell blocks or wings within their division, and lunch reliefs for the [Correctional] Officers assigned to their area[,] *** [o]ccasionally *** relieve[] an Officer at his post so that the Officer can take a break[,] *** schedule and coordinate the various inmate movements which are to take place each day *** so as to insure that as few inmates as possible are in the corridors at any one time[,] *** tour their assigned areas checking that Officers are maintaining their posts in a proper fashion, assisting inmates attempting to obtain necessary toiletries and clothing, quelling disturbances between inmates and Officers, advising Officers of the best methods to complete tasks, and responding to any and all problems that may crop up in their assigned areas. [Citation.] Sergeants also *** initiat[e] 'shakedowns', that is, searches of wings and cell blocks for contraband and evidence of the beginnings of escape attempts ***. Sergeants are also responsible for *** checking to make sure Officers are patrolling their areas[, and] assist the Correctional Officers in feeding and moving the inmates, and watching the inmates when [they] are in the yard."

The Joint Employers do not quarrel with the hearing officer's findings about what activities constitute the sergeants' usual daily work, but they do misapprehend how the Board dealt with these facts.

To begin with, the Board did not fail to find that the sergeants had the "authority" to direct subordinates; they recognized that they had this authority when serving as shift commanders. However, with reference to the remainder of their duties, the Board stated:

"Since the sergeants do not fulfill the test of 'directing' their subordinates, within the meaning of the Act, their time spent circulating through their territories in the jail cannot be counted toward the preponderance criterion. The sergeants do not have the same level of command responsibility, and are more like lead workers, touring their territories to make themselves available to assist and back up the correctional officers as needed."

This finding does not refute that the sergeants, apart from their occasional role as shift commanders, had some authority to direct subordinates; rather, it expresses the Board's conclusion that none of that authority required the consistent use of independent judgment and thus was not supervisory authority. The hearing officer had found that any authority the sergeants had to "direct" subordinates, outside their occasional role as shift commanders, did not require the consistent use

of independent judgment. The Board, in determining that the sergeants' authority could not be counted toward the "preponderance" criterion, left this finding undisturbed; and the Joint Employers' claim that the Board failed to apply this criterion results from their misunderstanding of its opinion and of the hearing officer's recommendations.

Accordingly, because the Joint Employers rely in this regard solely on the meritless claim that "the Board's failure to apply the third part of the test, the 'independent judgment prong,' to the sergeants, is a misapplication of the Act," and do not charge alternatively that if the Board had so found, such a finding would have been erroneous, they essentially leave the Board's finding unchallenged. In any event, the record contains substantial evidence that much of the sergeants' authority in this regard is guided by the Department's operations manual and its general orders, and by the routine rotation of assignments and privileges, and is, as the Board found, "qualitatively and quantitatively more circumscribed than is that of the lieutenants and captains" when members of those ranks serve as shift commanders, a role in which they, according to the Board's finding, have "substantial [responsibility] for giving assignments to subordinates" as well as "responsibility for *** assuring their [subordinates'] adherence to those assignments, *** evaluating their performance" and "ensuring the security of their units when they are present." (See, e.g., *Peru v. Illinois State Labor Relations Board* (1988), 167 Ill. App. 3d 284, 293-94.) Consequently, the Joint Employers have provided no basis for the finding of any error in the Board's failure to include this authority in its consideration of the "preponderance of time" criterion, and therefore they supply no predicate for overturning its judgment that the sergeants were not supervisors.

Finally, the Joint Employers claim that the Board's finding that the sergeants are not supervisors "results in an intolerable deficiency of supervision over the correctional officers at the CCDOC. It is essential that there be a supervisory link between the rank-and-file and the top echelon, and that command authority not be impaired by requiring the employer to negotiate with the personnel constituting that link." They cite *City of Freeport v. Illinois State Labor Relations Board* (1988), 169 Ill. App. 3d 151, *aff'd* (1990), 135 Ill. 2d 499, in support. *City of Freeport* held that "[t]he lieutenants and sergeants [of the Freeport police department] represent the only link between the rank-and-file of the department and the chief of police. *** [T]he Board *** fail[ed] to give due consideration to how a police department must function." (169 Ill. App. 3d at 159.) The court made this

statement, however, in the process of reviewing the question of whether the principal work of those officers was substantially different from that of their subordinates (169 Ill. App. 3d at 159); and, just as important, the Board's finding in the case at bar that the sergeants met that part of the section 3(r) test has been conceded by the Joint Employers to "not [be] an issue in this case." Accordingly, we affirm the Board's determination that the sergeants are not "supervisors" under section 3(r) of the Act.

Turning now to AFSCME's petition for review, it claims that the Board erred in finding that the lieutenants and captains have the authority to effectively recommend the discipline of subordinates because those ranks may only report their improper actions, and may not recommend that discipline in general, or that a particular sanction, be imposed.

■ The record shows that lieutenants and captains, when finding that a subordinate has violated rules or regulations, may complete one of two disciplinary action forms, thereby recommending either "summary punishment" for transgressions such as tardiness, minor disrespect for superiors or the wearing of an improper uniform, which ranges from an oral reprimand to a three-day suspension; or the recommendation may be for "major cause punishment," if it stems from a more serious violation of the rules, and can vary from a 4- to a 29-day suspension. Lieutenants and captains may select which form to use, but do not recommend the specific punishment that should follow; instead, they report what they believe the subordinate to have wrongfully done or omitted to do and what regulations were violated. The forms are then sent to a superintendent, who determines whether and what summary punishment should be imposed, or, in the case of major cause punishment, determines whether to forward the report to the Director of Security for further action. AFSCME does not quarrel with the Board's finding that the recommendations are not "typically *** rejected or ignored." See *Peru v. Illinois State Labor Relations Board* (1988), 167 Ill. App. 3d 284, 289-90.

The very act of completing and forwarding one of the two forms, however, is not just a recommendation that a subordinate be disciplined, but a recommendation that the officer receive a punishment within a particular range. Such authority goes far beyond that of the firefighter ranks in *City of Davenport v. Public Employment Relations Board* (Iowa 1978), 264 N.W.2d 307, 321, upon which AFSCME relies, who were held pursuant to a similar statute not to have the authority to discipline subordinates when they could press a charge with the fire chief against a subordinate, but whose power to do so was the

same as that of any other member of the fire company. We therefore hold that the Board's conclusion that lieutenants and captains have the authority to discipline subordinates was not against the manifest weight of the evidence.

AFSCME next argues that the Board erred in finding that the lieutenants and captains have the authority to effectively recommend the promotion of subordinates because their role is limited to evaluating and ranking subordinates, which evaluations comprise 50% of the score for correctional officers, 60% of the score for sergeants and 70% of the score for lieutenants; the remaining part of one's score is determined by the results of an examination, and the Department's Merit Board determines who is promoted. The rating for a subordinate is determined after a discussion by that officer's superiors, who typically spend about 15 to 20 minutes discussing an officer's performance and agreeing on a rating. While these ratings are reviewed by the superintendent, they are rarely changed.

While the lieutenants and captains do not specifically recommend that a particular subordinate be promoted, the rating they give and the extent to which that rating influences the promotion have the same effect. Further, the role of these ranks is much greater than that of the disputed ranks in *City of Davenport*, upon which AFSCME again relies in sole support of its position. Here, too, we cannot say that the Board's determination was contrary to the evidence.

AFSCME's next contention is that the Board erred in finding that lieutenants and captains, when serving as shift commanders, have the authority to direct subordinates and that they have the authority to use independent judgment when so engaged, claiming that these findings were against the manifest weight of the evidence. When acting as shift commanders, lieutenants and captains allocate personnel throughout the area over which they have control, inspect the uniforms of subordinates at roll call, inspect the structural condition of their divisions to determine what work needs to be done and to order that such work be completed, make sure that subordinates are properly doing their jobs, assign relief officers to guard inmates while other officers are at lunch, approve requests by subordinates for time off and tour their areas to insure that the needs of the inmates are being met, and that problems are being properly dealt with. Clearly, then, the Board did not improperly find that lieutenants and captains had the authority to direct subordinates; the more relevant consideration is whether this authority requires the consistent use of independent judgment.

The Board found that "[t]heir [lieutenants' and captains'] independent judgment is also implicated by their overall responsibility for ensuring the security of their units when they are present. It may be true that, even as shift commanders, they do not often face situations calling for innovative or unguided judgments. However, 'the relevant consideration is whether the commander has authority to exercise independent judgment and is expected to do so when necessary to direct the activities of his subordinates' " (quoting *City of Freeport*, 169 Ill. App. 3d at 160).

AFSCME asserts that the Board erred when it found that the lieutenants and captains satisfied the "consistent use of independent judgment" requirement in that it made its determination based upon the authority of those ranks to exercise independent judgment, rather than upon their use of such judgment. They point out that the court in *City of Freeport*, in affirming the appellate court decision quoted above, held that when applying the "independent judgment" criterion, the Board must determine "the number of times in which independent judgment might be required in performing a particular supervisory function. * * * [T]he fact that performance of such functions may occasionally require the ranking officer to use discretion or independent judgment is not sufficient * * *." As an example, the court cited the difference between a decision which is controlled by the existence of a particular set of facts, and a decision which requires the officer to "choose between two or more significant courses of action." *City of Freeport*, 135 Ill. 2d at 520-21.

We note that the supreme court did not discuss any difference that might exist between its standard and the one laid down by the appellate court; nevertheless, using the language of the supreme court's opinion as our guide, we hold that the record sufficiently supports a finding that when acting as shift commanders in charge of ensuring the security of their areas of the jail, and despite the existence of a host of rules and regulations governing life therein, lieutenants and captains consistently exercise independent judgment when allocating personnel, directing the repair of structural conditions, making assignments, approving requests by subordinates for time off, and resolving difficulties they discover when supervising the conditions of inmates, observing the relations between inmates and the correctional officers and sergeants having jurisdiction over them, and insuring that proper security conditions are maintained in their area. Although the authority of the lieutenants and captains is not unguided, it is far from "routine or clerical" (see section 3(r) of the Act (Ill. Rev. Stat.

1987, ch. 48, par. 1603(r)), and thus requires them to consistently judge situations and to make decisions as to how to proceed.

■■ Finally, AFSCME claims that the Board erroneously failed to apply the requirement that supervisors devote a preponderance of their employment time to exercising supervisory authority, and that it instead improperly presumed that because the work described above was the "principal work" of the lieutenants and captains, a fact which allowed them to satisfy the first part of the section 3(r) test, it also consumed a preponderance of their time. AFSCME does not claim that such a finding would have been contrary to the evidence, but rather that the Board failed to make the finding in accordance with the requirements of section 3(r). Accordingly, it requests that this cause be remanded for a determination of the amount of time spent by the disputed ranks in directing and in recommending the rewarding, promotion, and discipline of subordinates, to the extent that those activities require the consistent use of independent judgment.

The Board, however, did not misapply the statute. In fact, apparently aware of the possibility that its decision would be so construed, the Board, after finding that the lieutenants' and captains' "oversight activity *** not only represents their 'principal work', it also clearly consumes a preponderance of their work time," stated:

"To so hold does not make the 'preponderance' element of the supervisory definition redundant of the 'principal work' element. An employee's principal work activity may be much different than that of his subordinates without involving the exercise of supervisory authority. In this case, however, the two are the same."

For the foregoing reasons, AFSCME's petition from the Board's order of April 26, 1989, is dismissed, its cross-petition from the order of June 28, 1989, is also dismissed, and the Board's order of June 28, 1989, is affirmed.

Dismissed in part; affirmed in part.

HARTMAN and DiVITO, JJ., concur.