4010160.r23

NO. 4-02-0928

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE COUNTY OF VERMILION and THE VERMILLION COUNTY SHERIFF,

Petitioners,

          v.

THE ILLINOIS LABOR RELATIONS BOARD, STATE PANEL, and Its Panel Members MANNY HOFFMAN, MIKE BRESLAN, DEBBIE LOUNSBERRY, SANDRA TRISTANO, DAVID BARKHAUSEN, and THOMAS WALSH; BRIAN E. REYNOLDS, Executive Director of Said Board/Panel; Administrative Law Judge WILLIAM E. WAECHTER of Said Board/Panel; and THE ILLINOIS FRATERNAL ORDER OF POLICE LABOR COUNCIL,

Respondents.

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Direct Review of the Illinois Labor Relations Board, State Panel

Case No. SRC02006

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

The Vermilion County sheriff and Vermilion County (hereinafter employers) petition for review of the decision of the Illinois State Labor Relations Board, State Panel (Board), finding that all full-time corrections sergeants (hereinafter sergeants) employed by the employers represent an appropriate unit for collective bargaining, as defined by section 3(s)(1) of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/3(s)(1) (West 2000)).  We affirm.

I. BACKGROUND

In August 2001, respondent, the Illinois Fraternal Order of Police Labor Council (hereinafter union), filed a "Representation/Certification Petition" with the Board, alleging that 30% of the employers' employees in an appropriate unit, as defined in section 3(s)(1)of the Act (5 ILCS 315/3(s)(1) (West 2000)), request an election to determine whether the union should be certified as the exclusive bargaining agent for the employees in that unit.  The union alleged that the appropriate unit included all full-time sergeants and excluded all other employees of the employer.  

In October 2001, an administrative law judge (ALJ) of the Board conducted a hearing on the union's petition.  At the hearing, the employers did not agree to recognize the unit on the ground that the sergeants are considered "supervisors," and, therefore, do not constitute an appropriate bargaining unit under the Act.  See 5 ILCS 315/3(s)(1) (West 2000) ("a bargaining unit determined by the Board shall not include both employees and supervisors, or supervisors only").  Accordingly, the ALJ found, and the parties agreed, that the only issue was whether the sergeants are "supervisors" within the meaning of the Act.  The parties further agreed that should the sergeants be found not to be supervisors within the meaning of the Act, they constitute an appropriate bargaining unit.

Vermilion County Sheriff William Patrick Hartshorn testified on the employers' behalf that the corrections division consists of 1 captain, 1 administrative lieutenant, 5 sergeants, and 30 correctional officers.  The captain and lieutenant both work the first shift only (from 7 a.m. until 3 p.m.), with the captain working Monday through Friday and the lieutenant working a six-day work schedule with three days off on a rotating basis.  One sergeant is assigned to the first shift, two sergeants are assigned to the second shift (from 3 p.m. to 11 p.m.), and two sergeants are assigned to the third shift (from 11 p.m. to 7 a.m.).  The sergeant is the only representative of the employers on the second and third shifts because no other management personnel are in the correctional facility during those shifts.  The sergeants are also the only representatives of the employers on the first shift on weekend days when the lieutenant's days off rotate to the weekend.

Hartshorn also testified regarding the sergeant job description, which is provided to all employees of the correctional facility and was admitted into evidence.  Sergeants (1) determine which correctional officers will work certain posts during a shift, (2) assign correctional officers to do routine work (such as processing prisoners for court appearances, releasing work-release prisoners, and taking prisoners for medical care), and (3) ensure that work is done.  Captains and lieutenants do not perform the same function.  Correctional officers are obligated to follow the commands of the sergeant.  If the minimum number of correctional officers are not present for a shift, the sergeants have independent authority to call an off-duty correctional officer to work and to force a correctional officer to work overtime until the shift roster is filled.  When new prisoners arrive, the sergeant assures that enough personnel are present to receive prisoners and reviews each correctional officer's paperwork to ensure it is completed correctly.  Sergeants oversee everything that a correctional officer does on a daily basis; however, they do not complete periodic written evaluations of those officers.

Hartshorn further testified that sergeants have the authority to issue oral and written reprimands and have independent authority to send a correctional officer home for violating a direct order or for being unfit for duty.  Following such action, the sergeant must submit a written report of the violation to the lieutenant or captain, who then reviews the report to determine "whether *** there's something that needs to be changed" and then forwards the report to the sheriff "for the disciplinary action."  The sergeant is not required to recommend any form of discipline but may do so.  A written report from a sergeant is the first step in the discipline process.  A sergeant has discretion to handle infractions at "his level" without submitting a written report up the chain of command to the sheriff.  The only infractions that a sergeant is required to report are the following: (1) a correctional officer is late for his shift; and (2) a correctional officer engages in behavior that creates a "threat to the facility."  The sergeants use their discretion to determine whether behavior creates a "threat to the facility."  Correctional officers may appeal the sergeants' actions under their collective-bargaining agreement. 

Hartshorn also testified that according to the grievance procedure in the collective-bargaining agreement, grievances should be submitted first to the sergeants.  If the grievance can be handled at the shift level, the sergeants have authority to do so without consulting the lieutenant, captain, or sheriff.  (The correctional officers' collective-bargaining agreement was admitted into evidence.)

Sergeant Stanley E. Rush testified on the union's behalf that he works the first shift.  At the beginning of his shift, Rush (1) confers with the previous shift sergeants to determine if any incidents occurred, (2) determines that all first-shift correctional officers are present, and (3) assigns their posts.  Rush does not assign himself a post, although he is counted when determining minimum staffing levels.  Rush is usually on the fourth floor of the facility taking phone calls or handling requests from the lieutenant or captain.  He assigns tasks to correctional officers, such as escorting attorneys to meetings with prisoners or taking prisoners to get dressed for court.  If needed, Rush will also perform these tasks himself.  

Rush also testified that 75% of his shift is spent performing correctional officer duties.  He completes cell checks, delivers money, dresses prisoners, releases work-release prisoners, helps process incoming prisoners, and escorts attorneys to meetings with prisoners.  The remainder of his shift is spent performing tasks only sergeants perform.  If he holds officers over or calls officers in, in accordance with the collective-bargaining agreement, the additional work is offered to senior officers first, and if none accept, the least senior officer is ordered to stay.  In any emergency, officers can be held over or called in.  Such an emergency would be for a reason other than falling below minimum staffing levels.  In such a case, the sergeant would not need permission from the lieutenant or captain to hold over or call in officers.  Rush had never held over or called in additional officers for other than minimum staffing levels without checking with the lieutenant or captain first, but he believed he has the authority to do so.

Rush further testified that he only receives requests for time off if the correctional officer needs to document that the request was made within the time limitation specified in the collective-bargaining agreement.  He does not grant or deny time- off requests.  If Rush determines that the next shift will fall below minimum staffing levels, he notifies a union representative.  The union representative determines which officer should be called in (based on seniority) and informs the sergeant.  If an officer brings to a sergeant a minor dispute between officers, the sergeant has authority to resolve it.  However, he does not handle written grievances.  Rush did not recall ever issuing a written reprimand but was aware of the captain's having issued written reprimands based on Rush's written report.  

Rush was not aware that he has authority to issue a written reprimand.  He occasionally verbally informs the lieutenant when he talks to officers about their mistakes.  If someone commits an act of misconduct on his shift, Rush is supposed to resolve the issue as best he can.  If he cannot do so immediately, he writes a report to the captain.  He has authority to send someone home if he determines that action is warranted, but he has never done so, and other sergeants have done so infrequently.  No rules govern what behavior a sergeant must document in a written report.

If a problem arises on Rush's shift, the correctional officers come to him for resolution.  Rush does not always go to the captain or lieutenant for advice when a problem arises, and he has authority to resolve problems related to everyday working conditions.  If an employee needs additional training on a particular skill, Rush has the responsibility as a sergeant to ensure that the officer receive help or training.

Rush attends command meetings that are also attended by the captain, lieutenant, other sergeants, and occasionally the sheriff, where overall shift performance is discussed.  The job description for sergeants differs from the correctional officers' job description in that sergeants have the duty to supervise and manage correctional officers.  Correctional officers cannot send someone home or call someone back to work.  Further, they are supposed to report observations of misbehavior to the sergeant.  If an employee is sick, correctional officers are required to report that information to the sergeant, who then determines whether to seek hospitalization.  Rush described his principal duties as follows:  "Making sure things are done at the proper time in the proper way as regards my personnel, and if they're not available, then I'd do it."  

In March 2002, the ALJ filed his recommended decision and order, in which he (1) determined that the correctional sergeants are "supervisors" within the meaning of the Act, and (2) recommended that the petition be dismissed.  

In April 2002, the union timely filed exceptions to the ALJ's recommended decision and order.  The union argued that "the focus is whether the [s]ergeants consistently exercise independent judgment with regard to disciplining, suspending, adjusting grievances, and directing the corrections officers.  The [u]nion limits its exception to these areas."  The employers did not file a response.  

In August 2002, the Board issued its written order, concluding that the sergeants are not "supervisors" within the meaning of the Act and directing an election in the petitioned-for unit.  Specifically, the Board found, in pertinent part, the following:  (1) the sergeants have authority, in the employer's interest, to perform 1 of the 11 statutorily enumerated supervisory functions--namely, the authority to suspend corrections officers; and (2) "the sergeants do not exercise [that] supervisory authority with consistent judgment a preponderance of their work time."  In October 2002, the Board issued a "Certificate of Representative," naming the union as the exclusive representative of a unit consisting of all sergeants employed by the employers.

In November 2002, the employers filed in this court a petition for review of the Board's decision.

II. ANALYSIS

The employers argue that the Board erred by determining that the sergeants are not supervisors under section 3(r) of the Act (5 ILCS 315/3(r) (West 2000)).  We disagree.  

A. Standard of Review

The Board, as the agency charged with administering and enforcing the Act, is empowered to determine whether an individual is a "supervisor" under the Act.  
City of Freeport v. Illinois State Labor Relations Board
, 135 Ill. 2d 499, 507, 554 N.E.2d 155, 159 (1990).  This court's review of the Board's decision is governed by section 3-110 of the Administrative Review Law (Law) (735 ILCS 5/3-110 (West 2000)) and extends to all questions of law and fact presented in the record.  While this court must view the Board's findings of fact as 
prima
 
facie
 true and correct, we will reverse those findings if they are against the manifest weight of the evidence and it is clearly evident the Board should have reached the opposite conclusion.  
Freeport
, 135 Ill. 2d at 507, 554 N.E.2d at 159.  Questions of law, such as the proper interpretation of a statute, are reviewed 
de
 
novo
.  See 
Freeport
, 135 Ill. 2d at 507, 554 N.E.2d at 159-60.

B. The Board's Determination That the Sergeants Are Supervisors

The Act provides a comprehensive system of collective bargaining for those public employees and employers who fall within its scope.  
Freeport
, 135 Ill. 2d at 505, 554 N.E.2d at 158.  The Act specifies that a bargaining unit determined by the Board may not include both supervisors and nonsupervisors.  5 ILCS 315/3(s)(1) (West 2000).  Our supreme court has explained the underlying rationale for this rule as follows:

"Supervisors are excluded from bargaining units under the Act to avoid the conflict of interest which arises when supervisors, who must apply the employer's policies to subordinates, are subject to control by the same union representing those subordinates."  
Freeport
, 135 Ill. 2d at 517, 554 N.E.2d at 164.

"Supervisor" is defined in section 3(r) of the Act (5 ILCS 315/3(r) (West 2000)) as follows:

"[A]n employee whose principal work is substantially different from that of his or her subordinates and who has authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, to adjust their grievances, or to effectively recommend any of those actions, if the exercise of that authority is not of a merely routine or clerical nature, but requires the consistent use of independent judgment.  Except with respect to police employment, the term 'supervisor' includes only those individuals who devote a preponderance of their employment time to exercising that authority."

1. 
The
 
Four
-
Pronged
 
Test

Citing 
Freeport
, the Board in this case stated that, when determining whether the sergeants are supervisors within the meaning of section 3(r) of the Act, it would consider whether they (1) performed principal work substantially different from that of their subordinates; (2) had authority in the interest of the employers to (a) "perform one or more of the 11 enumerated supervisory indicia" in section 3(r), or (b) effectively recommend such action; (3) consistently used independent judgment in the performance of those functions; and (4) spent a preponderance of their employment time engaged in supervisory activities.  5 ILCS 315/3(r) (West 2000).  However, the supreme court in 
Freeport
 made clear that in certain circumstances, the fourth prong of this analysis--the preponderance prong--does not apply: 

     "The Act specifically states that, in police employment, supervisory employees are not required to meet the fourth part of the Act's supervisory definition.  [Citation.] Thus, police employees may qualify as supervisors even if they do not devote a preponderance of their employment time exercising their supervisory authority."  
Freeport
, 135 Ill. 2d at 512, 554 N.E.2d at 162.  

In reversing the Board's determination that sergeants with the City of Freeport police department were not supervisors within the meaning of section 3(r) of the Act, the court further stated as follows: 

     "The Board improperly gave dispositive weight to the amount of time the ranking officers spend exercising their supervisory authority.  The Board essentially requires that the ranking officers be principally involved in exercising supervisory functions before it will find that their work is substantially different from that of their subordinates.  [Citation.]  The Act expressly states, however, that the fourth prong of the supervisory test need not be satisfied with respect to police employment.  [Citation.] Thus, a police employee may be deemed a supervisor under the Act even if he does not devote a preponderance of his work time to exercising supervisory authority."  
Freeport
, 135 Ill. 2d at 517, 554 N.E.2d at 164.

Thus, an important initial inquiry in this case seems to be whether the employment of the sergeants at the Vermilion County jail constitutes "police employment," as that term is used in section 3(r) of the Act.  5 ILCS 315/3(r) (West 2000).  Interestingly, we note that section 3(p) of the Act defines "security employee," in part, as one "who is responsible for the supervision and control of inmates at correctional facilities."  5 ILCS 315/3(p) (West 2000).  That definition surely encompasses the sergeants at issue in this case.  Further, section 3(k) defines "peace officer," in part, as one who has been appointed to a police force, department, "or agency and sworn or commissioned to perform police duties."  5 ILCS 315/3(k) (West 2000).  Section 3(k) also contains a list of persons who are not included within the definition of "peace officer"; that list does not include security employees.  

Most significantly, the term "police employment," as used in section 3(r) of the Act, is not defined therein, and we have found no case construing the breadth of that term.  The supreme court in 
Freeport
 referred to "police employment" but did so in the context of evaluating employees in a police department.  Specifically, regarding the sergeants at issue here, we have found no case that states--or even indicates--whether "police employment" might be broad enough to include these "security employees." 

Clearly, if the sergeants in the present case were engaged in "police employment," then both the Board and this court would have to view the facts of this record through a different prism.  The supreme court in 
Freeport
 explained why as follows:  

"If the ranking officers are not supervisors, the Freeport police department operates entirely without supervision a large part of the time.  In such circumstances, it is not unreasonable to conclude that 
even
 
the
 
relatively
 
small
 
amount
 
of
 
supervisory
 
power
 
exercised
 
by
 
the
 
ranking
 
officers
 
makes
 
them
 
representatives
 
of
 
their
 
employer
."  (Emphasis added.)  
Freeport
, 135 Ill. 2d at 522, 554 N.E.2d at 166.

Given the nature of the sergeants' duties and the other similarities between this case and 
Freeport
 (at least from the point of view of the employers), the sergeants' employment may fit within the meaning of "police employment" under section 3(r), thus reducing the Board's inquiry from four prongs to three as it determines whether the sergeants are supervisors.  5 ILCS 315/3(r) (West 2000).  However, for two reasons, we decline to resolve this issue.

First, in deference to the Board's expertise as well as its fact-finding ability, we prefer that the Board address this issue in the first instance.  For example, due to size or other factors, sergeants at one jail might be viewed as being involved in "police employment" within the meaning of section 3(r) of the Act, whereas sergeants at another jail would not.  5 ILCS 315/3(r) (West 2000).  The Board should have the opportunity to initially draw such distinctions.

Second, the record reveals that the employers never argued before the Board that the sergeants' employment constituted "police employment," as that term is used in section 3(r) of the Act.  5 ILCS 315/3(r) (West 2000).  Thus, the employers' position in this case is similar to the position of the employers in 
American Federation of State, County, & Municipal Employees, Council 31 v. Illinois Local Labor Relations Board
, 221 Ill. App. 3d 814, 582 N.E.2d 1202 (1991), where the First District reviewed a determination by the then-Illinois Local Labor Relations Board (hereinafter Local Board) (the precursor of the present Board) that sergeants employed by the Cook County Department of Corrections and the Sheriff of Cook County were not supervisors within the meaning of section 3(r) of the Act (then Ill. Rev. Stat. 1987, ch. 48, par. 1603(r)).  The joint employers in that case argued to the appellate court that the Local Board was mistaken because, in part, it incorrectly held that the sergeants needed to devote a preponderance of their employment time to exercising supervisory authority.  
Local Board
, 221 Ill. App. 3d at 821, 582 N.E.2d at 1206.  In support of their argument, the joint employers appear to have asserted that the sergeants were supervisors because they were engaged in police employment.  However, the appellate court rejected that argument because the joint employers failed to raise it before the Local Board or in their briefs to the appellate court.  
Local Board
, 221 Ill. App. 3d at 821, 582 N.E.2d at 1206.  Similarly, in this case, the employers did not raise the issue of "police employment" either before the Board or before this court. 

2. 
Application
 
of
 
Applicable
 
Statutory
 
Factors

In light of the above discussion, we now consider the Board's application of the four-part test under the standard of review previously stated. 

As the Board correctly noted, for the sergeants to be deemed supervisors under the Act, the evidence needed to satisfy each prong under section 3(r).  See 
Northwest Mosquito Abatement District v. Illinois State Labor Relations Board
, 303 Ill. App. 3d 735, 748, 708 N.E.2d 548, 557 (1999) (in which the First District noted that (1) "[c]ourts apply a four-part test to determine whether an employee is a supervisor" under section 3(r) of the Act, and (2) "[a]n employee must satisfy all four parts of this test to be a supervisor under the Act"); 5 ILCS 315/3(r) (West 1996).  Thus, we need not examine each prong of the four-pronged test if we conclude that the Board correctly determined that the evidence in the present case failed to meet one of the four prongs.  We have so concluded.  

The employers argue that the Board's determination that the supervisors do not spend a preponderance of their time performing supervisory functions was against the manifest weight of the evidence.  We disagree. 

In 
Freeport
, the supreme court explained that in order to satisfy the "preponderance test," it must be shown that "the most significant allotment of the employee's time" is spent exercising supervisory functions.  "In other words, the employee must spend more time on supervisory functions than on any one nonsupervisory function."  
Freeport
, 135 Ill. 2d at 532, 554 N.E.2d at 171.  In 
Department of Central Management Services v. Illinois State Labor Relations Board
, 278 Ill. App. 3d 79, 86, 662 N.E.2d 131, 136 (1996), this court rejected a "strictly mathematical 'majority of time'" test and held that "[w]hether a person is a 'supervisor' should be defined by the significance of what that person does for the employer, regardless of the time spent on particular types of functions."   

In this case, the Board found that the sergeants have authority to perform one supervisory function--namely, to suspend subordinates under certain conditions.  The Board also found that under either the 
Freeport
 test or the test enunciated by this court in 
Central Management Services
, 

"the sergeants clearly do not satisfy [the preponderance prong].  The record shows that, in the past year, two employees have been suspended.  The sergeants therefore do not spend more time on this supervisory function tha[n] on their nonsupervisory activities, nor do they spend a majority of their time engaged in this function.  Their authority to suspend is simply not superior in importance to their nonsupervisory functions."

Reviewing the Board's determination under the appropriate standard of review, we conclude that its determination was not contrary to the manifest weight of the evidence nor is it clearly evident that the Board should have reached the opposite conclusion.

In so concluding, we note that the employers do not appear to challenge the Board's determination directly, asserting  instead that because the sergeants are often the only on-duty employees in a supervising capacity at the Vermilion County jail, they must necessarily be spending a preponderance of their time engaged in supervision.  We disagree that such a conclusion follows where, as here, deciding whether a person is a "supervisor" must be made in accordance with the particular legislative formula set forth in section 3(r) of the Act.  5 ILCS 315/3(r) (West 2000). 

III. CONCLUSION

For the reasons stated, we affirm the Board's order.

Affirmed.

KNECHT, P.J., and COOK, J., concur.